Docket No. 18 CV 4655(JBW)(SJB)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

SALIK BEY, TERREL JOSEPH, STEVEN SEYMOUR
AND CLYDE PHILLIPS,

Plaintiffs,

-against-

CITY OF NEW YORK, DANIEL NIGRO, SHENECIA
BEECHER, KAREN HURWITZ, FDNY, JOHN AND
JANE DOES 1-10,

Defendants.

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

*ZACHARY W. CARTER*
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y.  10007*

*Of Counsel:  Andrea O'Connor*
*Tel:  (212) 356-4015*
*Matter No. 2018-067561*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................... iii

PRELIMINARY STATEMENT .................................................................................1

STATEMENT OF FACTS ..........................................................................................2

ARGUMENT

      POINT I

            PLAINTIFFS RACE, COLOR, NATIONAL ORIGIN AND/OR GENDER DISCRIMINATION MUST BE DISMISSED ...................................................................2

            A.  Plaintiffs' Cannot Establish a Prima Facie Case of Discrimination ..................................................................4

            B.  Defendants Have Articulated a Legitimate, Non-Discriminatory Business Reason for their Actions that Plaintiffs Cannot Show is Pretextual ......................................................................10

      POINT II

            PLAINTIFFS CANNOT PLAUSIBLY STATE A CLAIM OF DISABILITY DISCRIMINATION UNDER ANY STATUTE ....................................................15

            A.  Plaintiffs Fail to State a Claim of Disparate Treatment Based on a Disability .......................................15

            B.  Plaintiffs' Failure to Accommodate Claim Fails..............................18

      POINT III

            AS A MATTER OF LAW, PLAINTIFFS CANNOT ESTABLISH A DISPARATE IMPACT CLAIM ...................................................................21

      POINT IV

            PLAINTIFFS' REMAINING CONSTITUTIONAL CLAIMS AND ALL CLAIMS UNDER 42 U.S.C. § 1981 MUST BE DISMISSED ..........................................23

**Page**

POINT V

      PLAINTIFFS CANNOT PROVE A *MONELL*
CLAIM ................................................................................................24

CONCLUSION....................................................................................................24

## TABLE OF AUTHORITIES

**Cases**                                                                                          **Pages**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ...................................................................................................3

*Atencio v. United States Postal Serv.*,
    198 F. Supp. 3d 340 (S.D.N.Y. 2016) ................................................................20

*Bowen-Hooks v. City of N.Y.*,
    13 F. Supp. 3d 179, 209-210 & 219-221 (E.D.N.Y. 2014) ....................................3

*Boyle v. McCann-Erickson, Inc.*,
    949 F. Supp 1095 (S.D.N.Y. 1997) ....................................................................9

*Bridges v. City of Bossier*,
    92 F.3d 329 (5th Cir. 1996) ...............................................................................17

*Brown v. Coach Stores, Inc.*,
    163 F.3d 706 (2d Cir. 1998) ...............................................................................21

*Carter v. Potter*,
    06 CV 3854 (JG)(LB), 2008 U.S. Dist. LEXIS 33423
    (E.D.N.Y. Apr. 23, 2008) ...................................................................................19

*Cheung v. Donahoe*,
    11 CV 0122 (ENV)(RLM), 2016 U.S. Dist. LEXIS 84683
    (E.D.N.Y. June 19, 2016) ...................................................................................19

*Chin v. N.Y.C. Hous. Auth.*,
    106 A.D.3d 443 (1st Dep't 2013),
    *appeal denied*, 22 N.Y.3d 861 (2014) ................................................................9

*Chin v. Port Auth. of N.Y. & N.J.*,
    685 F.3d 135 (2d Cir. 2012),
    *cert. denied, sub nom Eng v. Port Auth. of NY & NJ*,
    2013 U.S. LEXIS 2647 (Apr. 1, 2013)..........................................................21-22

*City of Los Angeles v. Heller*,
    475 U.S. 796, 799 (1986) ...................................................................................24

*Colwell v. Suffolk County Police Dep't*,
    158 F.3d 635 (2d Cir. 1998),
    *cert. denied* 526 U.S. 1018 (1999) .............................................................17, 18

*Dancause v. Mount Morris Cent. Sch. Dist.*,
    590 Fed. Appx. 27 (2d Cir. 2014) ......................................................................16

**Cases**                                                                                     **Pages**

*Duplan v. City of New York*,
   888 F.3d 612 (2d Cir. 2018) ................................................................................. 21, 23-24

*Dwares v. City of N.Y.*,
   985 F.2d 94, 100 (2d Cir. 1993) ................................................................................ 24

*Emmer v. Trs. of Columbia Univ. in the City of N.Y.*,
   2014 N.Y. Slip Op 31200(U) (Sup. Ct. N.Y. Apr. 24, 2014) ......................................... 21, 22

*Figueroa v. New York City Health & Hosps. Corp.*,
   03 CV 9589 (NRB), 2007 U.S. Dist. LEXIS 58342, 2007 WL 2274253
   (S.D.N.Y. Aug. 7, 2007) .......................................................................................... 6

*Flores v. Entergy Nuclear Operations, Inc.*,
   313 F. Supp. 3d 511 (S.D.N.Y. 2018) ........................................................................ 14

*Formilien v. Beau Dietl & Assocs.*,
   10 Civ. 3077 (NRB), 2012 U.S. Dist. LEXIS 86523 (S.D.N.Y. June 21, 2012) ...................... 5

*Gaines v. N.Y.C. Transit Authority*,
   353 Fed.Appx. 509 (2d Cir. Nov. 16, 2009) .................................................................. 14

*Grady v. Affiliated Cent., Inc.*,
   130 F.3d 553 (2d Cir. 1997) .................................................................................... 7

*Graham v. Long Island R.R.*,
   230 F.3d 34 (2d Cir. 2000) ...................................................................................... 7

*Graves v. Finch Pruyn & Co.*,
   457 F.3d 181 (2d Cir. 2006) .................................................................................... 18

*Green v. New York City Fire Department*,
   08 Civ. 0491 (BMC), 2008 U.S. Dist. LEXIS 103885
   (E.D.N.Y. Dec. 23, 2008) ........................................................................................ 18

*Hagan v. City of New York*,
   39 F.Supp.3d 481 (S.D.N.Y 2014) .............................................................................. 21

*Henry v. NYC Health & Hosp. Corp.*,
   18 F. Supp. 3d 396 (S.D.N.Y. 2014) .......................................................................... 6

*Hubbard v. Port Auth. of N.Y. & N.J.*,
   05 Civ. 4396 (PAC), 2008 U.S. Dist. LEXIS 12316 (S.D.N.Y. Feb. 20, 2008) ...................... 6

*Hudson v. Merrill Lynch & Co., Inc.*,
   138 A.D.3d 511 (1st Dep't 2016) .............................................................................. 3

**Cases**                                                                                                    **Pages**

*Humphries v. City Univ. of N.Y.*,
    13 Civ. 2641 (PAE), 2013 U.S. Dist. LEXIS 169086
    (S.D.N.Y. Nov. 26, 2013) ..................................................................................8

*Jackan v. New York State DOL*,
    205 F.3d 562 (2d Cir. 2000),
    *cert. denied*, 531 U.S. 931 (2000) ..................................................................20

*Jeffreys v. City of N.Y.*,
    426 F.3d 549 (2d Cir. 2005) .............................................................................3

*Jett v. Dallas Indep. Sch. Dist.*,
    491 U.S. 701 (1989) ........................................................................................23

*Johnson v. Andy Frain Servs.*,
    638 F. App'x 68 (2d Cir. 2016) ........................................................................9

*Kees v. Wallenstein*,
    973 F. Supp. 1191 (W.D.Wash. 1997),
    *aff'd*, 161 F.3d 1196 (9th Cir.1998) ..............................................................19

*Kennedy v. Gray*,
    83 F. Supp. 3d 385 (D.D.C. 2015) .................................................................17

*King v. Town of Wallkill*,
    302 F. Supp. 2d 279 (S.D.N.Y. 2004) ............................................................19

*Leatherman v. Tarrant Co. Narcotics Intel. & Coordination Unit*,
    507 U.S. 163, 164 (1993) ...............................................................................24

*Lore v. City of Syracuse*,
    670 F.3d 127 (2d Cir. 2012) .............................................................................5

*Maresco v. Evans Chemetics, Div. of W.R. Grace & Co.*,
    964 F.2d 106 (2d Cir. 1992) ...........................................................................22

*Mastrolillo v. Connecticut*,
    No. 08 Civ. 2217, 2009 U.S. App. LEXIS 24296 (2d Cir. Nov. 5, 2009) ...........17

*McDonnell Douglas Corp. v. Green*,
    411 U.S. 792 (1973) ....................................................................................3, 16

*Meiri v. Dacon*,
    759 F.2d 989 (2d Cir.),
    *cert. denied*, 474 U.S. 829 ..............................................................................8

**Cases**                                                                         **Pages**

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*,
715 F.3d 102 (2d Cir. 2013) ...................................................................9

*Mohan v. City of N.Y.*,
17 Civ. 3820 (KPF), 2018 U.S. Dist. LEXIS 130933 (S.D.N.Y. Aug. 3, 2018),
2018 U.S. Dist. LEXIS 130933 ................................................................8

*Monell v. Dep't of Social Services*,
436 U.S. 658 (1978) ...........................................................................24

*Noll v. Int'l Bus. Machines Corp.*,
787 F.3d 89 (2d Cir. 2015) ..................................................................19

*Norville v. Staten Island Univ. Hosp.*,
196 F.3d 89, 95 (2d Cir. 1999)................................................................7

*Owens v. Napolitano*,
05 CV 5987 (RJD), 2011 U.S. Dist. LEXIS 36721 (E.D.N.Y. Mar. 31, 2011)........................5

*Pena v. Bd. of Elections*,
16 CV 0427 (VEC)(BCM), 2017 U.S. Dist. LEXIS 17392
(S.D.N.Y. Feb. 6, 2017), 2017 U.S. Dist. LEXIS 25481
(S.D.N.Y., Feb. 22, 2017)......................................................................6

*Pinto v. N.Y.C. Admin. for Children's Servs.*,
2018 U.S. Dist. LEXIS 154778 (S.D.N.Y. Sep. 11, 2018)......................................3

*Pub. Utils. Comm'n of Dist. of Columbia v. Pollak*,
343 U.S. 451 (1952) ...........................................................................23

*Rodriguez v. Beechmont Bus Serv., Inc.*,
173 F. Supp. 2d 139 (S.D.N.Y. 2001) .........................................................22

*Ruiz v. County of Rockland*,
609 F.3d 486 (2d Cir. 2010) ..................................................................3

*Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*,
183 F.3d 155 (2d Cir. 1999) .................................................................18

*Scott v. Harris*,
550 U.S. 372 (2007) ...........................................................................2

*Sista v. CDC Ixis N. Am., Inc.*,
445 F.3d 161 (2d Cir. 2006) ..............................................................16, 18

**Cases**                                                                      **Pages**

*Smith v. Xerox Corp.*,
196 F.3d 358 (2d Cir. 1999) ............................................... 22

*Sorlucco v. N.Y.C. Police Dep't.*,
971 F.2d 864 (2d Cir. 1992) ............................................... 24

*St. Mary's Honor Ctr. v. Hicks*,
509 U.S. 502 (1993) ............................................................. 3

*Stewart v. City of Hous. Police Dep't*,
372 F. App'x 475 (5th Cir. 2010) ........................................ 17

*Sylla v. City of New York*,
2005 U.S. Dist. LEXIS 31817 ............................................. 23

*Temple v. Hudson View Owners Corp.*,
222 F. Supp. 3d 318 (S.D.N.Y. 2016) ................................. 19

*Terry v. Ashcroft*,
336 F.3d 128 (2d Cir. 2003) ................................................. 4

*Thomson v. Odyssey House*,
No. 14-CV-3857 (MKB), 2015 U.S. Dist. LEXIS 125887
(E.D.N.Y. Sept. 21, 2015),
*aff'd,* 652 F. App'x 44 (2d Cir. 2016) ................................. 16

*Tsombanidis v. West Haven Fire Dep't*,
352 F.3d 565 (2d Cir. 2003) ............................................... 21

*Vann v. City of New York*,
72 F.3d 1040 (2d Cir. 1995) ................................................. 2

*Vega v. Hempstead Union Free Sch. Dist.*,
801 F.3d 72 (2d Cir. 2015) ................................................... 3

*Vippolis v. Vill. of Haverstraw*,
768 F.2d 40 (2d Cir. 1985) ................................................. 24

*Wegmann v. Young Adult Inst., Inc.*,
15 Civ. 3815 (KPF), 2016 U.S. Dist. LEXIS 26674 (S.D.N.Y. Mar. 2, 2016) ....................... 8

*Weinstock v. Columbia Univ.*,
224 F.3d 33 (2d Cir. 2000) ................................................. 15

*Welsh v. Tulsa*,
977 F.2d 1415 (10th Cir. 1992) .......................................... 17

**Cases**                                                                 **Pages**

*Westchester Cty. Corr. Benevolent Ass'n v. Cty of Westchester*,
   346 F. Supp. 2d 527 (S.D.N.Y 2004) ................................................................5

*Woroski v. Nashua Corp.*,
   31 F.3d 105 (2d Cir. 1994) ..........................................................................9

*Wright v. N.Y. State Dep't of Corr.*,
   831 F.3d 64 (2d Cir. 2016) ........................................................................19

**Statutes**

29 C.F.R. 1910.134 ......................................................................................12

29 C.F.R. 1910.134(d)(1)(ii) ........................................................................11

29 C.F.R. 1910.134(g)(1)(i)(A) .....................................................................10

42 U.S.C. § 1981 .............................................................................. 1, 21, 23, 24

42 U.S.C. § 1983 ...........................................................................1, 3, 9, 21, 23, 24

42 U.S.C. § 12102 (1) ...................................................................................15

42 U.S.C. § 12102(1)(A) ...............................................................................16

Fed. R. Civ. P. 56 ...........................................................................................1

Fed. R. Civ. P. 56(a) .......................................................................................2

Local Civil Rule 56.1 .......................................................................................2

N.Y.C. Admin. Code § 8-102 ........................................................................19

## PRELIMINARY STATEMENT

Plaintiffs, Firefighters employed by the New York City Fire Department ("FDNY"), bring this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 1981, 1983, the Americans With Disability Act ("ADA"), the United States Constitution, the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL") alleging they were discriminated against on the basis of race, color, national origin, gender, and disability in that they were required to comply with the FDNY's safety standards for personal grooming. Specifically, plaintiffs claim that the FDNY's requirement that full duty Firefighters engaged in fire suppression duties be "freshly shaven" is discriminatory. Plaintiffs self-identify as African-American males with a medical condition called Pseudofolliculitis Barbae ("PFB") which allegedly prevents them from shaving with a razor down to the skin.

Defendants now move, pursuant to Fed. R. Civ. P. 56, for summary judgment on all claims. Plaintiffs' disparate treatment claims must be dismissed because plaintiffs did not suffer an adverse employment action and cannot demonstrate that any actions taken by defendants were motivated by discriminatory animus. Plaintiffs' disability discrimination claims similarly fail because plaintiffs have not established that they are disabled or impaired within the meaning of the ADA, the NYSHRL and/or the NYCHRL and they cannot show that they suffered any adverse action. Plaintiffs' failure to accommodate claims fail because defendants provided an accommodation and plaintiffs' preferred accommodation is unreasonable.

With respect to plaintiff's disparate impact claims, such claims must be dismissed because plaintiffs do not contend that the "clean shave" policy is a facially neutral practice that has a disproportionate effect on a protected class. Rather, they claim the policy was instituted with the specific intent of discriminating against African-American firefighters. Further, the

record is completely devoid of any statistical analysis as to how the clean shave policy affected anyone other than plaintiffs themselves.  As to plaintiffs' remaining claims, while the Amended Complaint makes a passing reference to the First, Fifth and Fourteenth Amendments, discovery has not shed any light on the nature of these claims, with the exception of plaintiffs' Equal Protection Clause disparate treatment claim.  To that end, plaintiffs' *Monell* claim must fail because there are no underlying constitutional violations.  Consequently, summary judgment should be granted to defendants on all claims.

## STATEMENT OF FACTS

For its statement of facts, defendants respectfully refer the Court to Defendants' Local Civil Rule 56.1 Statement of Undisputed Facts ("Def. 56.1"), dated August 15, 2019, and the exhibits and deposition transcripts upon which it is based.

## ARGUMENT

### POINT I

### PLAINTIFFS RACE, COLOR, NATIONAL ORIGIN AND/OR GENDER DISCRIMINATION MUST BE DISMISSED

Summary judgment is appropriate when there is no genuine dispute as to a material fact and the movant is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a). "In moving for summary judgment against [plaintiff], [defendant] may satisfy [its] burden by pointing to an absence of evidence to support an essential element of [plaintiff's] claim." *Vann v. City of New York*, 72 F.3d 1040, 1048 (2d Cir. 1995).  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Scott v. Harris*, 550 U.S. 372, 380 (2007)(internal quotations omitted).  While the Court must draw all reasonable inferences from the facts against the movant, nevertheless, to defeat summary judgment, "a nonmoving party must offer some hard evidence showing that its

version of the events is not wholly fanciful." *Jeffreys v. City of N.Y.*, 426 F.3d 549, 554 (2d Cir. 2005). Finally, as to the quantum of evidence required, "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

The Title VII, § 1983, NYSHRL, and NYCHRL disparate treatment claims are subject to the burden-shifting analysis in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[1] Under the *McDonnell Douglas* framework, plaintiffs bear the burden of proving a prima facie case. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993). Plaintiffs' Title VII, § 1983 and NYSHRL race, color, national origin and gender discrimination claims require a showing that each plaintiff: (1) is a member of a protected class; (2) is qualified for his position; (3) suffered an adverse employment action; and that (4) the circumstances give rise to an inference of discrimination. *See Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 83 (2d Cir. 2015). Should each plaintiff establish a prima facie case, the burden shifts to defendants to offer a legitimate, non-discriminatory reason for the alleged adverse employment action. *See Ruiz v. County of Rockland*, 609 F.3d 486, 492 (2d Cir. 2010). If defendants satisfy their burden, plaintiffs must establish a genuine issue of material fact showing defendants' reason is a mere pretext for a discriminatory motive. *See Ruiz*, 609 F.3d at 492.

Plaintiffs' NYCHRL claims are analyzed under both the burden-shifting framework established in *McDonnell Douglas* and a mixed-motive standard. *See Hudson v. Merrill Lynch & Co., Inc.*, 138 A.D.3d 511, 514-15 (1st Dep't 2016). Under the mixed-motive

---

[1]  *See Bowen-Hooks v. City of N.Y.*, 13 F. Supp. 3d 179, 209-210 & 219-221 (E.D.N.Y. 2014) (Title VII, §1983, SHRL); *Pinto v. N.Y.C. Admin. for Children's Servs.*, 2018 U.S. Dist. LEXIS 154778, 14-15 (S.D.N.Y. Sep. 11, 2018) (CHRL).

standard, upon the employer's demonstration of a legitimate, non-discriminatory reason for the adverse employment action, the burden shifts to the employee to show that discrimination was at least a motivating factor in the employment action.  *See id.*

## A.      Plaintiffs' Cannot Establish a Prima Facie Case of Discrimination

Plaintiffs' race, color, national origin and gender discrimination claims must fail because plaintiffs cannot show that they suffered an adverse employment action.  An adverse employment action constitutes a materially adverse change in the conditions of employment. *See Guity*, 2017 U.S. Dist. LEXIS 27542, at *37. To that end, it must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003) (internal quotations omitted).   Plaintiffs claim they suffered an adverse employment action by being placed "light duty."  A Firefighter is placed on light duty by FDNY when the member is assigned a "restriction" from FDNY's Bureau of Health Services ("BHS") which prevents the member from performing as a full duty Firefighter.  *See* Def. 56.1 at ¶ 59. On May 9, 2018, plaintiffs were notified that the FDNY could no longer accommodate their requests to maintain facial hair.  *See id.* at ¶ 66.   Each Plaintiff was instructed that if he was currently unable to comply with the FDNY's Safety Standards pertaining to facial hair, he should report to BHS on May 22, 2018 for a duty evaluation.  *See id.*  Plaintiffs reported to BHS on May 22, 2019 and reported that they could not comply with the FDNY's Safety Standards at that time and were therefore placed on light duty.  *See id.* at ¶ 68.   While on light duty, plaintiffs maintained the same title, salary, seniority and other contractual benefits, such as medical insurance coverage, as he had while on full duty.  *See id.* at ¶ 62.

Plaintiff Bey was on light duty for one day; Plaintiff Joseph was on light duty for 16 days; Plaintiff Phillips was on light duty for 28 days; and Plaintiff Seymore was on light duty for 10 days.  *See* Def. 56.1 at ¶¶ 69-72.  Upon their return to full duty, each Plaintiff returned to

his assigned firehouse and resumed his duties as a full duty Firefighter.  *See id.* at ¶ 73.  Plaintiffs allege that while on light duty they were unable to perform overtime or to perform "mutuals." *See generally* Am. Comp.  Plaintiffs Phillips, Seymore and Joseph allege that while designated as light duty they were reassigned to administrative positions within the FDNY. *See* Def. 56.1 at ¶¶ 126, 143, 161.

While a reassignment could, under certain circumstances, amount to an adverse employment action, *see Lore v. City of Syracuse*, 670 F.3d 127, 170 (2d Cir. 2012), courts in this Circuit have held that *temporary* reassignments which do not affect an employee's salary or benefits do not constitute an adverse employment action. *See, e.g., Formilien v. Beau Dietl & Assocs.*, 10 Civ. 3077 (NRB), 2012 U.S. Dist. LEXIS 86523, at *37-38 (S.D.N.Y. June 21, 2012); *Owens v. Napolitano*, 05 CV 5987 (RJD), 2011 U.S. Dist. LEXIS 36721, at *16-17 (E.D.N.Y. Mar. 31, 2011).  Given the short durations of these assignments to light duty, particularly with respect to Plaintiff Bey, such assignments do not amount to adverse employment actions.  *See Westchester Cty. Corr. Benevolent Ass'n v. Cty of Westchester*, 346 F. Supp. 2d 527, 530 (S.D.N.Y 2004).

Further, plaintiffs contend that while assigned to light duty they were ineligible to perform overtime.  *See generally* Am. Comp.  This allegation, however, is unsupported by the evidence as Plaintiff Phillips earned overtime compensation for work performed while he was assigned to light duty.  *See* Def. 56.1 at ¶ 127.  As such, plaintiffs' blanket contention that overtime was unavailable to light duty Firefighters is unsupported by the record.  Even if plaintiffs' contention that they were unable to work overtime during their light duty assignment was viable, the record is devoid of any evidence that plaintiffs were actually denied overtime. Without any plausible evidence that plaintiffs were actually denied overtime, their "conclusory

allegation[s] that [they] w[ere] denied overtime without more, is [nevertheless] insufficient to substantiate an adverse employment action." *See Henry v. NYC Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 406 (S.D.N.Y. 2014); *see also Pena v. Bd. of Elections*, 16 CV 0427 (VEC)(BCM), 2017 U.S. Dist. LEXIS 17392 at *24 n.14 (S.D.N.Y. Feb. 6, 2017) (Report and Recommendation adopted by (2017 U.S. Dist. LEXIS 25481 (S.D.N.Y., Feb. 22, 2017))(finding that being told overtime was not available did not qualify as "sufficiently disadvantageous to constitute an adverse employment action"); *Hubbard v. Port Auth. of N.Y. & N.J.*, 05 Civ. 4396 (PAC), 2008 U.S. Dist. LEXIS 12316, at *12 (S.D.N.Y. Feb. 20, 2008).

With respect to plaintiffs' allegations that they were unable to perform "mutuals"[2] while on light duty, it is clear from plaintiffs' testimony that this alleged inability was neither material nor adverse.  Illustrating this point is Plaintiff Joseph's testimony that "until recently he "didn't care for doing 24 or mutuals" and that he now only performs mutuals "here and there." *See* Def. 56.1 at ¶ 167.   Further, Plaintiff Phillips testified that the inability to mutually swap tours with a coworker only resulted in him being unable to "get days off like I want to." *See id.* at ¶ 128.   Moreover, being assigned what an employee may view as an "unfavorable work schedule" is insufficient to establish an adverse employment action, "since it does since they do not have a material impact on the terms and conditions of plaintiff's employment." *Figueroa v. New York City Health & Hosps. Corp.*, 03 CV 9589 (NRB), 2007 U.S. Dist. LEXIS 58342, 2007 WL 2274253, at *4 (S.D.N.Y. Aug. 7, 2007).  As such, based on plaintiffs' own testimony and the applicable case law, it is clear that the inability to perform mutuals was a not a material alternation to the terms and conditions of plaintiffs' employment.

---

[2] A "mutual" is akin to a tour swap between co-workers.

Further, plaintiffs have failed to establish that any alleged adverse action occurred because of their race, color, national origin and/or gender.  To defeat the motion for summary judgment plaintiffs "must present evidence sufficient to allow a rational factfinder to infer that the employer was actually motivated in whole or in part by . . . discrimination." *Grady v. Affiliated Cent., Inc.*, 130 F.3d 553, 560 (2d Cir. 1997).  To raise an inference of discrimination, plaintiffs must show that the FDNY "treated him less favorably than a similarly situated employee outside his protected group." *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000); Norville v. Staten Island Univ. Hosp., 196 F.3d 89, 95 (2d Cir. 1999).

As of May 1, 2018, 16 Firefighters, including plaintiffs, had a medical accommodation to maintain facial hair and four Firefighters had religious accommodations to grow facial hair.  *See* Def. 56.1 at ¶ 53.  Of the 16 Firefighters that had a medical accommodation to maintain facial hair 12, including the plaintiffs, self-identified as African-American, one self-identified as Hispanic, one self-identified as Caucasian, one self-identified as "Other," and one chose not to self-identify.  *See id.* at ¶ 54.  Each of these 20 Firefighters were advised via the May 9, 2018 letters that their requests to maintain facial hair could no longer be accommodated and that if the Firefighter was unable to comply with the FDNY's Safety Standards pertaining to facial hair, he should report to FDNY's Bureau of Health Services on May 22, 2018 for a duty evaluation.  *See id.* at ¶ 55.  Plaintiffs and three other Firefighters appeared at BHS on May 22, 2019.  *See id.* at ¶ 64.  In addition to plaintiffs, two of the Firefighters that reported to BHS self-identify as African-American and the third self-identifies as Caucasian.  *See id.* at ¶ 74. All seven of these Firefighters were placed on light duty on May 22, 2018. *See id.*  Because all seven Firefighters – including the Caucasian Firefighter -- were

treated exactly the same in connection with their accommodations there can be no inference of discrimination.

Plaintiffs may argue that defendants treated them less favorably than similarly situated Caucasian Firefighters who maintained facial hair *without* accommodations and in violation of the FDNY's Safety Standards. "However, '[a] plaintiff relying on disparate treatment evidence must show []he was similarly situated in all material respects to the individuals with whom []he seeks to compare herself.'" *Wegmann v. Young Adult Inst., Inc.*, 15 Civ. 3815 (KPF), 2016 U.S. Dist. LEXIS 26674, 30 (S.D.N.Y. Mar. 2, 2016) (citation omitted). "What constitutes 'all material respects' varies from case to case, but 'must be judged based on [] whether the plaintiff and those he maintains were similarly situated were subject to the same workplace standards.'" *Humphries v. City Univ. of N.Y.*, 13 Civ. 2641 (PAE), 2013 U.S. Dist. LEXIS 169086, 21 (S.D.N.Y. Nov. 26, 2013) (citation omitted).

Further, for a selective enforcement claim to reach a jury, the plaintiff must adduce evidence consisting of more than mere conclusory or unsubstantiated statements. *See Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.), *cert. denied*, 474 U.S. 829. Plaintiffs failed to meet this burden. Plaintiffs' vague testimony that unidentified Caucasian Firefighters maintained facial fair in violation of the FDNY's Safety Standards, *see* Def. 56.1 at ¶ 150, is completely uncorroborated by any documentation or other evidence. Similarly, Plaintiff Joseph's allegation that "Captain Florenco" maintains a "handlebar mustache," *see id.* at ¶ 166, is insufficient as "Captain Florenco" is not similarly situated to plaintiffs given his rank. *See Mohan v. City of N.Y.*, 17 Civ. 3820 (KPF), 2018 U.S. Dist. LEXIS 130933, *31 (S.D.N.Y. Aug. 3, 2018), 2018 U.S. Dist. LEXIS 130933 at *31 (citation omitted)(employment characteristics which can

support a finding that two employees are 'similarly situated' include 'similarities in education, seniority, performance, and specific work duties.'").

Plaintiffs may also claim that Dr. Hurwitz's alleged comment to Plaintiff Bey that he was a "clean shaven boy" gives rise to an inference of race discrimination. *See* Def. 56.1 at ¶ 108. Notwithstanding that Dr. Hurwitz was not involved in the decision-making process to no longer permit accommodations for closely-cropped facial hair, thereby negating any attempt to connect their alleged comments to plaintiff's termination, *see Boyle v. McCann-Erickson, Inc.,* 949 F. Supp 1095, 1102 (S.D.N.Y. 1997), even if she were a decision-maker, a single, vague comment is insufficient to raise an inference of discrimination. *See Woroski v. Nashua Corp.*, 31 F.3d 105, 109-10 (2d Cir. 1994) (stray remarks, even if made by a decision-maker, do not constitute sufficient evidence to make out a case of employment discrimination). As such, plaintiff's race, color, national origin and/or gender discrimination claims under Title VII, NYSHRL and § 1983 must be dismissed.

Turning to plaintiffs' NYCHRL claims, the proper inquiry under that statute rests on whether plaintiff was treated "less well at least in part *because of* [his protected characteristic]." *See Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013) (citation omitted)(emphasis in original*).* Therefore, plaintiffs must still establish a causal connection between their protected characteristics and any alleged negative treatment. *See Johnson v. Andy Frain Servs.*, 638 F. App'x 68, 71 (2d Cir. 2016). Plaintiffs' claims for race, color, national origin and/or gender discrimination fail under the NYCHRL because plaintiffs simply cannot establish differential treatment based on any of those protected characteristics. *See Chin v. N.Y.C. Hous. Auth.*, 106 A.D.3d 443, 445 (1st Dep't 2013), *appeal denied*, 22 N.Y.3d 861 (2014). Moreover, as with plaintiffs' state and federal claims, plaintiffs

do not carry their burden of showing that defendants' conduct was caused by a discriminatory motive.   Accordingly, plaintiffs' NYCHRL race, color, national origin and/or gender discrimination claims must be dismissed.

**B.     Defendants Have Articulated a Legitimate, Non-Discriminatory Business Reason for their Actions that Plaintiffs Cannot Show is Pretextual**

Even if plaintiffs could satisfy their burden in establishing a prima facie case of discrimination related to any protected class, which they cannot, defendants had legitimate, non-discriminatory reasons for no longer permitting full duty Firefighters to maintain facial hair.  The United States Department of Labor's Occupational Health and Safety Administration ("OSHA") promulgates a "Respiratory Protection Standard" that apply, via the New York State Public Employees Safety and Health Act ("PESH"), to FDNY Firefighters.  *See* Def. 56.1 at ¶¶ 7-9. The OSHA Respiratory Protection Standard prohibits employers from allowing employees who wear tight-fitting facepieces to have facial hair that comes between the sealing surface of the facepiece and the face.  *See* 29 CFR 1910.134(g)(1)(i)(A).  When a respirator, such as the one utilized by FDNY firefighters, is worn pursuant to 29 CFR 1910.134(g)(1)(i)(A), "it has to fit correctly, and this will require the wearer's face to be ***clean-shaven*** where the respirator seals against it."  *See* Def. 56.1 at ¶ 11.

OSHA further requires an employed to conduct "fit testing" to ensure a tight seal between the facepiece and the wearer's face.  OSHA Fit Test Protocols provide that a fit test "shall not be conducted if there is any hair growth between the skin and the facepiece sealing surface, such as stubble beard growth, bear, mustache or sideburns which cross the respirator sealing surface."  *See id.* at ¶ 13.  OSHA has explained that "[a]n employer whose records show a respirator wearer passing a fit-test with facial hair in the respirator sealing surface is not considered to be compliant with the standard."  *See id.* at ¶ 14.  This is because "[t]he fit that is

achieved with a beard or facial hair is unpredictable; it may change daily depending on growth of the hair and position of the hair at the time the fit is tested." *Id.*

Federal regulations further require that an employer select a respirator that has been certified by the National Institute for Occupational Health and Safety ("NIOSH"). *See* 29 C.F.R. 1910.134(d)(1)(ii). NIOSH states that "facial hair that lies along the sealing area of the respirator, such as beards, sideburns, mustaches, or even more than one day or 24 hours growth of stubble, should not be permitted on when employees who are required to wear respirators that rely on tight facepiece fit." *See* Def. 56.1 ¶ 18. NIOSH defines facial hair "stubble" as "any facial hair growth that is older than 24 hours." *Id.* Similarly, the National Fire Protection Association ("NFPA"), which creates safety standards for fire protection, provides that "[m]embers who have a beard or facial hair at any point where the facepiece is designed to seal with the face or whose hair could interfere with the operation of the unit shall not be permitted to use respiratory protection at emergency incidents or in hazardous or potentially hazardous atmospheres." *Id.* at ¶¶ 19-20. NFPA standards further provide that "[t]hese restrictions should apply regardless of specific fitting test measurement that can be obtained under test conditions." *Id.* at ¶ 21.

In or about December 2017, FDNY supervisors at the training academy expressed concerns to Assistant Commissioner for Equal Employment of Opportunity Don Nguyen ("AC Nguyen") about a probationary Firefighter wearing facial hair. *See id.* ¶ 35. AC Nguyen then discussed these concerns with FDNY Commissioner Daniel Nigro and was directed to review the FDNY's policy of permitting facial hair accommodations for fully duty Firefighters. *See id.* at ¶ 36. AC Nguyen worked with FDNY Chief of Safety, Joseph Jardin, to review the practice. *See id.* ¶ 37.

In conducting its' review of the policy of allowing active duty firefighters to maintain closely-cropped facial hair as an accommodation, the FDNY: (1) reviewed the operational considerations as they pertain to FDNY Safety Standards; (2) gathered information pertaining the various religious and medical requirements of firefighters; (3) reviewed applicable case law; (4) held numerous meetings with FDNY employees; (4) reviewed the OSHA Respiratory Protection standard, including 29 C.F.R. 1910.134; (5) reviewed documents issued by the National Fire Protection Association; (6) performed research related to facepiece seal performance and facial hair; (7) consulted with the manufacturer of the Scott Full-Facepiece Respirator with Comfort Seal regarding its use and whether Scott has, or is working on a design, that would permit the user to wear facial hair; (8) sought guidance from the New York State Department of Labor, Public Employee Safety and Health; (9) consulted with the Chicago Fire Department to obtain information regarding that department's accommodation policies; (10) reviewed opinion letters issued by OSHA; (11) reviewed a document issued by "Safety+Health The Official Magazine of the NSC Congress and Expo;" (12) reviewed journal articles relating to the use of Facepiece Respirators; (13) reviewed documents issued by the Centers for Disease Control and Prevention; (14) reviewed documents issued by the U.S. Department of Labor; (15) reviewed documents issued by the Pennsylvania Office of the State Fire Commissioner; (16) reviewed documents issued by the New York State Department of Labor, Public Employee Safety and Health; (17) reviewed documents issued by the U.S. Department of Health & Human Services; (18) reviewed documents issued by the Industrial Safety & Hygiene News; (19) reviewed the operating and maintenance instructions for the Scott Full-Facepiece Respirator with Comfort Seal; (20) reviewed documents issued by the U.S. Department of the Navy; (21) reviewed the operating instructions for the Millennium APR/CBRN Respirator; (22) consulted

12

with the National Personal Protective Technology Laboratory; and (23) reviewed documents issued by the American National Standards Institute.  *See* Def. 56.1 at ¶ 43.

AC Nguyen and Chief Jardin also researched whether there were alternatives to the respirator and facepiece currently utilized by the FDNY to determine whether any could accommodate facial hair.  *See id* at ¶ 44.  They considered a "hood," which is commonly found as respiratory protection in industrial areas, or a different type of SCBA as alternatives.  *See id*. However, because a SCBA is required for structural firefighting, a "hood" would not be compliant with federal law.  *See id* at ¶ 45.  Chief Jardin spoke with a representative from Scott, the manufacturer of the SCBA utilized by the FDNY, and the representative indicated that there was no SCBA available or in production that would allow for facial hair because such a product would not be compliant with federal law.  *See id* at ¶ 46.  Chief Jardin testified that he also consulted with a representative from NIOSH regarding whether Firefighters with facial hair could have facial hair and that the representative directed him to OSHA opinions that "said the answer was no."  *See id* at ¶ 47.  Chief Jardin testified that he researched whether any international organizations utilized a SCBA that permitted the wearer to don facial hair and could not recall any organizations that did.  *See id.* at ¶ 48.

AC Nguyen provided Commissioner Nigro with "all sides and aspects of the [facial hair] issue" in order for Commissioner Nigro to make a determination regarding the accommodation policy.  *See id.* at ¶ 49.  In reaching the decision to no longer permit accommodations to maintain closely-cropped facial hair for full duty Firefighters, Commissioner Nigro testified that based on the "overriding principle" contained in the OSHA regulations that facial hair comes between the sealing surface of the facepiece and the mask, the FDNY "was compelled to abide by that regulation."  *See id.* at ¶ 50.  Commissioner Nigro testified that, after

13

discussions with his executive staff and the Chief of the Department, he reached the conclusion that the FDNY could not "disregard[] the safety of members" and could not "disregard[] the federal and state guidelines" and that "safety outweighed" all other concerns.  *See id.* at ¶ 51. As such, Commissioner Nigro determined that the FDNY could no longer permit closely-cropped facial hair as a medical or religious accommodation.  *Id.*

Compliance with mandatory federal regulations, such as OSHA and NIOSH's Respiratory Protection Standards, is considered a legitimate non-discriminatory reason. *See Flores v. Entergy Nuclear Operations, Inc.*, 313 F. Supp. 3d 511 (S.D.N.Y. 2018).  Here, the FDNY determined that its practice of permitting accommodations to maintain closely-cropped facial was not in compliance with mandatory federal regulations and therefore the practice could no longer continue.  Further, genuine safety concerns are also legitimate, non-discriminatory reasons supporting an alleged adverse employment action. *See, e.g., Gaines v. N.Y.C. Transit Authority*, 353 Fed.Appx. 509, 510-11 (2d Cir. Nov. 16, 2009).  As explained by Commissioner Nigro, the FDNY has a vital interest in ensuring the safety of its employees and the public at large.  It is undisputed that a Firefighter's facepiece is a critical piece of safety equipment which is why federal regulations **require** that in order for it to be used safely and correctly a Firefighter's face must be clean-shaven where the respirator seals against it.  As such, the decision to no longer permit accommodations for facial hair was made based on legitimate, non-discriminatory reasons.

Upon this record, plaintiffs are wholly unable to establish that defendants' legitimate reasons were pretext for discrimination.  It is plaintiffs' position that "OSHA does not prohibit close cropped facial hair for firefighters," s*ee* Def. 56.1 at ¶ 94, and therefore FDNY's reliance on the OSHA regulations in making the decision to no longer permit facial hair

accommodations is pretextual.  In essence, plaintiffs disagree with FDNY's "interpretation" of OSHA.  This disagreement is, plainly, insufficient.  *See Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000)("To get to the jury, 'it is not enough . . . to disbelieve the employer; the factfinder must [also] believe the plaintiff's explanation of intentional discrimination.'")(ellipsis and brackets in *Weinstock*)(citation omitted).

Further, plaintiffs may point to the fact that they each passed a fit test with facial hair as evidence that FDNY's stated reason for removing the accommodations was pretextual.  However, OSHA directs that "[a]n employer whose records show a respirator wearer passing a fit-test with facial hair in the respirator sealing surface is not considered to be compliant with the standard."  Def. 56.1 at ¶ 14.  In accordance with this directive, Dr. Hurwitz testified that any fit test performed on a Firefighter with facial hair between the skin and the facepiece sealing surface is "not an accurate test."  Def. 56.1 ¶ 27.  As such, because these fit tests were not performed in compliance with OSHA, they are not valid tests.

At its heart, plaintiffs' argument is that FDNY's efforts to come in to compliance with federal regulations were merely a smokescreen for discrimination.  There is no support for this whatsoever in the record.  As such, plaintiffs' discrimination claims must be dismissed.

## POINT II

### PLAINTIFFS CANNOT PLAUSIBLY STATE A CLAIM OF DISABILITY DISCRIMINATION UNDER ANY STATUTE

**A.  Plaintiffs Fail to State a Claim of Disparate Treatment Based on a Disability**

The ADA Amendment Act of 2008 ("ADAAA") defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."  42 U.S.C. § 12102 (1).  To establish a prima facie case of discrimination under the

15

ADA, NYSHRL and NYCHRL a plaintiff must show that: (1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of his disability. *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006) (quotation marks omitted); *see also Thomson v. Odyssey House*, No. 14-CV-3857 (MKB), 2015 U.S. Dist. LEXIS 125887, at *16, 18 (E.D.N.Y. Sept. 21, 2015) (applying same to NYSHRL and NYCHRL claims), *aff'd,* 652 F. App'x 44 (2d Cir. 2016). Discrimination claims under these statutes are analyzed under the burden-shifting framework set in *McDonnell Douglas*. *See Sista*, 445 F.3d at 169.

Plaintiffs are not disabled within the meaning of the ADA. "The ADA defines disability as 'a physical or mental impairment that substantially limits one or more major life activities,' 42. U.S.C. § 12102(1)(A), and provides a non-exhaustive list of major life activities, including 'eating, sleeping, . . . concentrating, thinking, communicating, and working.'" *Dancause v. Mount Morris Cent. Sch. Dist.*, 590 Fed. Appx. 27, 28 (2d Cir. 2014). Plaintiffs allege that they are disabled in the major life activities of caring for themselves and working. *See* Am. Comp. at ¶ 99.

Plaintiffs appear to allege that they are substantially limited in the ability to care for themselves because they cannot shave "with a razor in order to be completely clean shaven." Am. Comp. at ¶ 25. Plaintiffs do not assert that they are completely precluded from shaving. Rather, they claim that they only cannot shave with a razor down to the skin because of PFB. As such, to the extent the Court finds that shaving to be a major life activity, it is clear that plaintiffs were not "substantially limited" in performing such activity.

16

With respect to an impairment that substantially limits the "major life activity of working," the Second Circuit holds that the inability to perform a single job, "does not constitute a substantial limitation in the major life activity of working." *Mastrolillo v. Connecticut*, No. 08 Civ. 2217, 2009 U.S. App. LEXIS 24296, at *5 (2d Cir. Nov. 5, 2009) (internal quotations omitted).   There is no evidence that plaintiffs were unable to perform any job other being a Firefighter with the FDNY.   In fact, the record demonstrates just the opposite as all plaintiffs were employed in a wide-range of jobs prior to becoming a Firefighter.  *See* Def. 56.1 at ¶¶ 101, 116, 117, 134, 154.  To be sure, Plaintiff Seymore, who was diagnosed with PFB in 2010, was employed *by the FDNY* as an Emergency Medical Technician from 2009 to 2013.  *See* Def. 56.1 at ¶ 133.    And Plaintiff Bey maintained other employment at JFK Airport concurrent with his FDNY employment as a Firefighter.  *See id.* at ¶ 102.  These facts establish that plaintiffs were able to perform a broad class of jobs and that they were able to perform other jobs *within* the FDNY.  Because plaintiffs' medical condition did not exclude them from a broad class of jobs, they are not disabled within the meaning of the ADA.  *Colwell v. Suffolk County Police Dep't*, 158 F.3d 635, 647 (2d Cir. 1998), *cert. denied* 526 U.S. 1018 (1999)(rejecting police officers' argument that their assignment to light duty positions permitted the inference that the officers were substantially limited in their ability to work); *see also Kennedy v. Gray*, 83 F. Supp. 3d 385, 386 (D.D.C. 2015); *Stewart v. City of Hous. Police Dep't*, 372 F. App'x 475, 477 (5th Cir. 2010); *Bridges v. City of Bossier*, 92 F.3d 329, 336 (5th Cir. 1996); *Welsh v. Tulsa*, 977 F.2d 1415, 1417 (10th Cir. 1992).

Further, to the extent plaintiffs may claim that FDNY regarded or perceived them as disabled because of their PFB, such claim fails as well. "It is not enough [] that the employer regarded that individual as *somehow disabled*; rather, the plaintiff must show that the employer

17

regarded the individual as disabled *within the meaning of the ADA.*" *Colwell*, 158 F.3d at 646 (2d Cir. 1998) (emphasis added).  In *Green v. New York City Fire Department*, 08 Civ. 0491 (BMC), 2008 U.S. Dist. LEXIS 103885 at *9 (E.D.N.Y. Dec. 23, 2008) this Court held that "[t]he firefighter position, as utilized by the FDNY" is a "single job" and therefore "there is no other job from which the FDNY's perception of his disability would disqualify him."  While *Green* is a pre-ADAAA case, this reasoning holds firm.  There is no evidence that the FDNY perceived plaintiffs as disabled within the meaning of the ADA, particularly given that Plaintiff Seymore was employed by the FDNY after being diagnosed with PFB in another capacity other than Firefighter.  As such, plaintiffs cannot show that they are disabled, or were perceived as disabled, within the meaning of the ADA, and therefore their ADA claims should be dismissed.

Moreover, as fully explained in Point II(A) *supra*, plaintiffs cannot establish that they suffered an adverse employment action, s*ee Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 159 (2d Cir. 1999)(standard for materially adverse action is the same under Title VII and the ADA) and, in any event, the record establishes that FDNY acted for legitimate, non-discriminatory reasons. *See Sista*, 445 F.3d at 169.  As such, even if the Court were to find plaintiffs disabled, or that FDNY perceived them as disabled within the meaning of the ADA, NYSHRL and/or the NYCHRL, their disability discrimination claims nevertheless fail.

## B.   Plaintiffs' Failure to Accommodate Claim Fails

To the extent plaintiffs rely on a failure to accommodate theory to establish their disability claims, these claims likewise fail.  To establish a failure to accommodate claim, a plaintiff must show: (1) defendants are covered under the statute; (2) he has a disability; (3) he was qualified to perform the essential functions of the job with or without reasonable accommodation; and (4) defendants refused to make such an accommodation. *See Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 184 (2d Cir. 2006).  After the plaintiff satisfies his burden of

"production and persuasion as to the existence of an accommodation that is facially reasonable," the burden "shifts to the defendant to rebut the reasonableness of the proposed accommodation," which "is in essence equivalent to the burden of showing, as an affirmative defense, that the proposed accommodation would cause the defendant to suffer an undue hardship." *Wright v. N.Y. State Dep't of Corr.,* 831 F.3d 64, 76 (2d Cir. 2016) (internal quotation marks omitted); *see also Noll v. Int'l Bus. Machines Corp.*, 787 F.3d 89, 94 (2d Cir. 2015)(ADA and NYSHRL); N.Y.C. Admin. Code § 8-102.

However, there is no need to engage in this burden-shifting analysis if the employer offered an accommodation that is, on its face, reasonable.  Here, defendants provided plaintiffs with a reasonable accommodation; namely a reassignment to light duty.  *See Cheung v. Donahoe*, 11 CV 0122 (ENV) (RLM), 2016 U.S. Dist. LEXIS 84683 at *34-35 (E.D.N.Y. June 19, 2016) *citing Carter v. Potter*, 06 CV 3854 (JG)(LB), 2008 U.S. Dist. LEXIS 33423 at *5 (E.D.N.Y. Apr. 23, 2008)("[L]ight duty assignments may be reasonable accommodations[.]"); *King v. Town of Wallkill*, 302 F. Supp. 2d 279, 291 (S.D.N.Y. 2004) (*citing Kees v. Wallenstein*, 973 F. Supp. 1191, 1196 (W.D.Wash. 1997), *aff'd*, 161 F.3d 1196 (9th Cir.1998))("Reassignment of a disabled employee to a vacant light-duty position is well established as a reasonable accommodation under the ADA.").  As such, defendants are entitled to summary judgment because, on the undisputed record, the accommodation offered is "plainly reasonable." *See Noll*, 787 F.3d at 94.

Further, defendants are not required to provide plaintiffs with the exact accommodation requested, i.e. to maintain facial hair.  *See Temple v. Hudson View Owners Corp.*, 222 F. Supp. 3d 318, 324 (S.D.N.Y. 2016).  Neither are defendants required to automatically continue plaintiffs' prior accommodations.  This is particularly true in light of the

fact that defendants' review of their accommodation policy revealed that permitting plaintiffs to maintain facial hair violates all applicable health and safety standards.   "Providing an accommodation that goes above and beyond what the [law] requires does not subject an employer to liability when it discontinues such accommodation, or constitute an admission that the accommodation is reasonable as defined by the [law]."   *See Atencio v. United States Postal Serv.*, 198 F. Supp. 3d 340, 360 (S.D.N.Y. 2016).   The fact that the FDNY provided plaintiffs' preferred accommodation for a period of time does not mean that such accommodation must be continued indefinitely.   Nor should the FDNY have to wait until a potentially catastrophic safety incident to occur to alter an accommodation.

Plaintiffs' preferred accommodation, i.e. to maintain facial hair, is unreasonable and presents an undue hardship.   As explained in Point II(B) *supra*, the FDNY could not permit plaintiffs to continue to wear facial hair and be compliant with the requirements of OSHA and NIOSH and the guidelines set forth by the NFPA.   Plaintiffs' own expert ***agreed*** that firefighters with "facial hair at any point where the facepiece is designed to seal with the face or whose hair could interfere with the operation of the unit shall not be permitted to use respiratory protection at emergency incidents or in hazardous or potentially hazardous atmospheres."   *See* Def. 56.1 at ¶ 93.   Plaintiffs' own expert testimony further supports a finding that it would be unreasonable for FDNY to permit plaintiffs to continue to wear facial hair as an accommodation.

Finally, to succeed on a failure to accommodate claim, a plaintiff must first demonstrate by more than "mere speculation," that an accommodation "existed and was available to her employer."   *Jackan v. New York State DOL*, 205 F.3d 562, 566-567 (2d Cir. 2000), *cert. denied*, 531 U.S. 931 (2000).   Here, plaintiffs have presented no evidence that an alternative device existed that would permit them to wear facial hair.   Dr. Abraham testified that

OSHA requires the FDNY to utilize a NIOSH-approved SBCA for Firefighters and that the devices identified on pages 20, 21 and 22 of his expert report *are not* NIOSH-approved SCBAs. *See* Def. 56.1 at ¶ 92. Plaintiff may contend that the fact that they passed a fit test with facial hair suffices to show that their prior accommodations were reasonable. However, as stated above, OSHA dictates that any fit test performed with on an employee with facial hair is not compliant with OSHA because the fit is "unpredictable." *See id.* at ¶ 14. Plaintiffs' failure to identify any viable alternative accommodation cements the fact that the only accommodation that does exist is the one provided by FDNY, namely reassignment to light duty.

### POINT III

### AS A MATTER OF LAW, PLAINTIFFS CANNOT ESTABLISH A DISPARATE IMPACT CLAIM

To establish a prima facie case of disparate impact under Title VII and/or the ADA[3], a plaintiff "must show that a facially neutral employment policy or practice has a significant disparate impact." *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 712 (2d Cir. 1998); *Tsombanidis v. West Haven Fire Dep't*, 352 F.3d 565, 573 (2d Cir. 2003). Under the NYSHRL and NYCHRL, a plaintiff must show that "a facially neutral practice had a disproportionate effect on a protected class." *Emmer v. Trs. of Columbia Univ. in the City of N.Y.*, 2014 N.Y. Slip Op 31200(U) at *12 (Sup. Ct. N.Y. Apr. 24, 2014). To make out a prima facie disparate impact case, a plaintiff therefore must "(1) identify a specific employment practice or policy; (2) demonstrate that a disparity exists; and (3) establish a causal relationship between the two." *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 151 (2d Cir. 2012), *cert. denied, sub nom Eng v.*

---

[3] To the extent plaintiffs could assert a § 1981 disparate impact claim after *Duplan*, disparate impact liability is nevertheless not available under §§ 1981 and 1983, which require a showing of intentional discrimination. *See, e.g., Hagan v. City of New York*, 39 F.Supp.3d 481, 505 (S.D.N.Y 2014).

*Port Auth. of NY & NJ*, 2013 U.S. LEXIS 2647 (Apr. 1, 2013)(Title VII); *Emmer v. Trs. of Columbia Univ. in the City of N.Y.*, 2014 N.Y. Slip Op 31200(U) at *12 (Sup. Ct. N.Y. Apr. 24, 2014)(NYSHRL and NYCHRL).  After identifying a specific employment practice, "plaintiffs then must present statistical evidence of a kind and degree sufficient to show the [policy] in question has caused the exclusion of protected groups." *Smith v. Xerox Corp.*, 196 F.3d 358, 365 (2d Cir. 1999). "The statistics must reveal that the disparity is substantial or significant, and must be of a kind and degree sufficient to reveal a causal relationship between the challenged practice and the disparity."  *Chin*, 685 F.3d at 151 (internal quotation marks and citation omitted).

Here, plaintiffs allege that the FDNY's Safety Standards "ha[ve] a significant disparate impact upon Black/African American men and those suffering from disability of PFB" and that FDNY's practices in connection with those standards, namely no longer permitting facial hair accommodations for full duty Firefighters, was an intentional effort to "thin[] the ranks of Black/African American firefighters."  Am. Compl. at page 1; ¶ 157.  Therefore, "[r]ather than identify[ing] a neutral employment policy with a statistically significant adverse impact, plaintiff[s] argue[] . . . that [they] w[ere] subjected to deliberate discriminatory conduct," and therefore their "arguments better resonate in support of [their] claim for disparate treatment." *Rodriguez v. Beechmont Bus Serv., Inc.*, 173 F. Supp. 2d 139, 148 (S.D.N.Y. 2001).  As such, plaintiffs' claims sound in intentional discrimination, and cannot be shoe-horned into the disparate impact framework.  *See Maresco v. Evans Chemetics, Div. of W.R. Grace & Co.*, 964 F.2d 106, 115 (2d Cir. 1992).

In any event, missing from the record is any statistical data demonstrating the impact, if any, the FDNY's Safety Standards had on African-American Firefighters or, more specifically, African-American Firefighters with PFB.  Further, plaintiffs' unsupported allegation

that between 45% and 85% of all African-American men, presumably in the world, have PFB is of no moment.  While it may be true that African-American men are more likely to have PFB, this fact alone cannot support a claim of disparate impact. The plaintiffs must show not only that they were adversely affected, but also that they were disproportionately affected relative to other groups. The record evidence precludes this necessary showing.

### POINT IV

**PLAINTIFFS' REMAINING CONSTITUTIONAL CLAIMS AND ALL CLAIMS UNDER 42 U.S.C. § 1981 MUST BE DISMISSED**

With respect to any purported First Amendment claim, neither the Amended Complaint nor discovery have shed any light on what this claim is based on.  As such this claim must be dismissed.  As for plaintiffs' Fifth Amendment claims, it is well established that the Fifth Amendment applies solely to the federal government.  *Sylla v. City of New York*, 2005 U.S. Dist. LEXIS 31817, at *6-7 (E.D.N.Y. Dec. 8, 2005 (citing *Pub. Utils. Comm'n of Dist. of Columbia v. Pollak*, 343 U.S. 451, 461 (1952)).  Thus, any claims against a municipality or a municipal official predicated upon the Fifth Amendment must be dismissed.  *Id.*  Given the clear applicable case law, plaintiffs' Fifth Amendment claims must be dismissed.  Finally, plaintiffs' intentional discrimination claims brought pursuant to the Equal Protection Clause must be dismissed as discussed substantively above.

As for plaintiffs' § 1981 claims, when the defendant is a state actor, 42 U.S.C. § 1983 is the exclusive remedy for violations of rights guaranteed under 42 U.S.C. § 1981.  *See Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733 (1989).  Moreover, in a recent decision, the Second Circuit re-emphasized this point, and explicitly held that "§1981 does not provide a separate private right of action against state actors."  *Duplan v. City of New York*, 888 F.3d 612

23

(2d Cir. 2018).  In the instant action, plaintiffs bring §1981 claims against all defendants.  *See generally* Am. Compl.  Accordingly, all of plaintiffs'§ 1981 claims must be dismissed.

## POINT V

## PLAINTIFFS CANNOT PROVE A *MONELL* CLAIM

For municipality liable under § 1983, a plaintiff must identify a policy or custom that caused a violation of their constitutional rights. *Monell v. Dep't of Social Services*, 436 U.S. 658, 690 (1978). Even where a plaintiff is able to identify a policy or custom, unconstitutional acts carried out by a municipality's employees may not alone render the municipality liable. *See Sorlucco v. N.Y.C. Police Dep't.*, 971 F.2d 864, 870 (2d Cir. 1992). Plaintiff must establish a causal connection – an "affirmative link" – between the policy and deprivation of a constitutional right. *Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985). Municipal liability will not attach unless the policy was the basis of plaintiff's constitutional deprivation. *See Dwares v. City of N.Y.*, 985 F.2d 94, 100 (2d Cir. 1993) (a municipal liability claim requires plaintiff to show that the city made a deliberate choice, implemented through the policy or custom alleged, that acted as the "moving force" behind the constitutional violation), overruled on other grounds by *Leatherman v. Tarrant Co. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 164 (1993). Where, as here, there is no constitutional violation, there can be no municipal liability. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (a municipality is not liable under § 1983 where no constitutional violation occurred).

## CONCLUSION

For the foregoing reasons, defendants respectfully request that their motion to dismiss the Complaint in its entirety be granted, that judgment in favor of defendants be entered,

and that defendants be granted costs, fees, and disbursements together with such other and

further relief as the Court deems just and proper.

Dated:        New York, New York
              August 15, 2019

                              ZACHARY W. CARTER
                              Corporation Counsel of the
                                City of New York
                              Attorney for Defendants
                              100 Church Street, Room 2-104
                              New York, New York 10007
                              (212) 356-4015
                              aoconnor@law.nyc.gov


                      By:     _____/s/_____
                              Andrea O'Connor
                              Assistant Corporation Counsel

25