UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------- ⟩

Bey, et al.,                                              :

                                 Plaintiff,                :        Civ. No. 18-cv-4655

       -against-                                        :        (JBW)(SJB)

                                               :

City of New York, Daniel Nigro, Karen Hurwitz,            :

Shenecia Beecher, FDNY, John and Jane Does 1-10.          :

                                               :

                           Defendants.                :

-------------------------------------------------------------- ⟩

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR**

**SUMMARY JUDGMENT ON LIABILITY AND SETTING A TRIAL FOR DAMAGES**

Aymen A. Aboushi, Esq.
Tahanie A. Aboushi, Esq.
The Aboushi Law Firm, PLLC
1441 Broadway, Fifth Floor
New York, N.Y. 10018
Telephone: (212) 391-8500
Facsimile: (212) 391-8508
*Attorneys for Plaintiffs*

<u>Table of Contents</u>

Table of Authorities ...................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................... 1

STATEMENT OF FACTS ............................................................................................ 1

STANDARD.................................................................................................................. 1

ARGUMENT ................................................................................................................. 2

    I.    Plaintiffs are entitled to summary judgment on their ADA, NYSHRL, and NYCHRL claims for disability discrimination. ........................................................................ 2

        A. ADA Claims.................................................................................................... 2

        B. NYSHRL ...................................................................................................... 3

        C. NYCHRL ...................................................................................................... 4

    II.    Plaintiffs are entitled to Summary Judgment on their Title VII, NYSHRL, and NYCHRL claims related to race, color, national origin, and sex. ......................................................... 11

    III.    Plaintiffs are entitled to summary judgment on their disparate treatment claims under Title VII, ADA, NYCHRL, and NYSHRL...................................................................... 13

    IV.    Plaintiffs are entitled to summary judgment on their disparate impact claims .................. 14

    V.    Plaintiffs are entitled to summary judgment on their Aiding and Abetting claims under NYSHRL and NYCHRL................................................................................................ 16

    VI.    Plaintiff is entitled to summary judgment on each element of their Equal Protection and *Monell* Claims. ...................................................................................................... 18

Conclusion ..................................................................................................................... 22

i

## Table of Authorities

**Cases**

545 Halsey Lane Properties, LLC v. Town of Southampton, 39 F.Supp.3d 326, 345-46 No. 14–CV–800 (ADS)(GRB), 2014 WL 4100952, at *18 (E.D.N.Y. Aug. 19, 2014) ........................ 21

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) 2

Annis v. County of Westchester, 136 F.3d 239, 245 (2d Cir.1998) ............................................. 18

Back v. Hastings On Hudson Union Free School Dist., 365 F.3d 107, 122 (2d Cir.2004) .......... 21

Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ................. 2

City of Cleburne, Texas v. Cleburne Living Center, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985) ............................................................................................................... 19

Dipol, 999 F.Supp. at 315 ........................................................................................................... 8

Disabled American Veterans v. United States Dep't of Veterans Affairs, 962 F.2d 136, 141 (2d Cir.1992) ............................................................................................................................... 19

E.E.O.C. v Bloomberg L.P., 967 F Supp 2d 816, 830 (S.D.N.Y. 2013) .................................... 2, 5

Easterling v State of Connecticut, 783 F Supp 2d 323, 331 [D Conn 2011] ............................... 15

El–Din v. N.Y.C. Admin. for Children's Servs., No. 12 Civ. 1133(PAE), 2012 WL 3839344, at *4 (S.D.N.Y. Sept. 5, 2012) ................................................................................................... 12

Feingold v. New York, 366 F.3d 138, 152 (2d Cir. 2004) ...................................... 3, 9, 17, 18, 19

Forrester v Corizon Health, Inc., 278 F Supp 3d 618, 625-26 [EDNY 2017], affd, 752 Fed Appx 64 [2d Cir 2018] ...................................................................................................................... 14

Galabya v. N.Y.C. Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000) ............................................. 3

Giano v. Senkowski, 54 F.3d 1050, 1057 (2d Cir.1995) ........................................................... 19

Gilbert v. Frank, 949 F.2d 637, 641–642 (1991) ........................................................................ 7

Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 110 (2d Cir.2010) ...................................... 12

Greco v. Cty. of Nassau, 146 F. Supp. 2d 232, 248 (E.D.N.Y. 2001) ........................................ 19

Hagan v City of New York, 39 F Supp 3d 481, 495 [SDNY 2014] ............................................. 13

Harris v. NYU Langone Med. Ctr., No. 12–cv–0454, 2013 WL 3487032, at *26 (S.D.N.Y. July 9, 2013), report and recommendation adopted as modified, 2013 WL 5425336 (S.D.N.Y. Sept. 27, 2013) .................................................................................................................................. 5

Hilton v. Wright, 673 F.3d 120, 129 (2d Cir. 2012) .................................................................... 7

Jackson v City of New York, CV 06-1835 RRM MDG, 2011 WL 1533471, at *16 [EDNY Mar. 3, 2011].................................................................................................. 8

Jemmott v. Coughlin, 85 F.3d 61, 67 (2d Cir.1996)................................................. 18

Kelly v New York State Off. of Mental Health, 200 F Supp 3d 378, 395 (E.D.N.Y. 2016).......... 7

Kwan v. Schlein, 634 F.3d 224, 228 (2d Cir.2011) ................................................. 2

Lee v City of Syracuse, 603 F Supp 2d 417, 440 (N.D.N.Y. 2009) ............................... 9

Liberty Lobby, 477 U.S. at 250, 106 S.Ct. 2505 .................................................... 2

Lindsay v. Ass'n of Prof'l Flight Attendants, 581 F.3d 47, 50 (2d Cir.2009) .................. 2

Malave v. Potter, 320 F.3d 321, 325 (2d Cir.2003) ................................................ 15

Marsalis v. Riker's Island Corr. Facility, No. 14–CV–5080 (KAM), 2014 WL 7076058, at *1 (E.D.N.Y. Dec. 15, 2014)...................................................................... 21

McBride v. BIC Consumer Prods. Mfg. Co., 583 F.3d 92, 96 (2d Cir. 2009) ........................ 3, 10

McCormack v. Long Island R. Co., No. 03 CIV. 6597 (JCF), 2006 WL 490032, at *1 (S.D.N.Y. Feb. 28, 2006).................................................................................. 5

McKinnon v. Patterson, 568 F.2d 930, 934 (2d Cir.1977) ........................................ 21

McMillan, 711 F.3d at 125–26 .......................................................................... 10

Mihalik v. Credit Agricole Cheuvreux North Am., Inc., 715 F.3d 102, 110 (2d Cir. 2013)........ 13

Monell v. Department of Social Services, 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) ............................................................................................ 21

Noel v. BNY–Mellon Corp., 514 F. App'x 9, 10 (2d Cir. 2013) .................................. 10

Norville v. Staten Island Univ. Hosp., 196 F.3d 89, 95 (2d Cir.1999)........................... 12

Overhoff v. Ginsburg Development, L.L.C., 2001 WL 533219 *7 (S.D.N.Y. May 16, 2001).... 19

Pilgrim v McGraw-Hill Companies, Inc., 599 F Supp 2d 462, 468 (S.D.N.Y. 2009).................. 12

Primmer v CBS Studios, Inc., 667 F Supp 2d 248, 257 (SDNY 2009)......................... 3

Provost v. City of Newburgh, 262 F.3d 146, 154 (2d Cir.2001) ................................. 19

Quinn v. Nassau County Police Department, 53 F.Supp.2d 347, 355 (E.D.N.Y.1999) .............. 19

Raspardo v. Carlone, 770 F.3d 97, 115 (2d Cir.2014)............................................. 21

Ricci v. DeStefano, 129 S.Ct. 2658, 2672, 174 L.Ed.2d 490 (2009)................................ 15

Robinson v. Metro–North Commuter R.R. Co., 267 F.3d 147, 160 (2d Cir.2001) .................... 15

Sherman v. Cty. of Suffolk, 71 F. Supp. 3d 332, 354–55 (E.D.N.Y. 2014)........................ 21

Simms v City of New York, 160 F Supp 2d 398, 405 (E.D.N.Y. 2001) ......................... 6, 8, 9, 14

Sista v. CDC Ixis N. Am., Inc., 445 F.3d 161, 169 (2d Cir. 2006)................................................ 2

Spiegel v. Schulmann, 604 F.3d 72, 83 (2d Cir. 2010)...................................................... 4

Stuart v. T–Mobile USA, Inc., No. 14–CV–4252, 2015 WL 4760184, at *9 (S.D.N.Y. Aug. 12, 2015)................................................................................................................................... 11

Tardif v City of New York, 13CV4056, 2017 WL 571016, at *17 (SDNY Feb. 6, 2017) ........... 5

Tomka, 66 F.3d at 1317 .................................................................................................... 17

Vale v. Great Neck Water Pollution Control Dist., 80 F.Supp.3d 426, 434 (E.D.N.Y. 2015) ....... 3

Weissman v. Dawn Joy Fashions, 214 F.3d 224, 233 (2d Cir.2000)........................................... 10

Widomski v State Univ. of New York (SUNY) at Orange, 748 F3d 471 (2d Cir. 2014).............. 9

Williams v. N.Y. City Hous. Auth., 61 A.D.3d 62, 872 N.Y.S.2d 27, 39 (2009) ....................... 13

**Statutes**

42 U.S.C. § 12102(2) .................................................................................................. 3, 6

42 U.S.C. § 2000e .......................................................................................................... 15

N.Y. Exec. Law § 292(21) ...................................................................................... 3, 4, 10

N.Y. Exec. Law § 296........................................................................................................ 3, 17

N.Y.C. Admin. Code § 8–102(16)(a) ................................................................................... 4

N.Y.C. Admin. Code § 8–107................................................................................... 4, 5, 17

## PRELIMINARY STATEMENT

Plaintiffs by and through their attorneys, The Aboushi Law Firm, submit this memorandum of law in support of their motion for summary judgment for liability against the Defendants.

Plaintiffs completed all exams and requirements to become firemen with the FDNY. The FDNY required Plaintiffs to be clean-shaven at all times. The Plaintiffs, all African American, request reasonable accommodations to this policy because they each suffered from a condition known as Pseudofolliculitis Barbae (PFB). Defendant issued accommodations to Plaintiffs until revoking them without basis or cause forcing Plaintiffs to remove their facial hair. As a result, Plaintiffs' brought suit against Defendants for discrimination based upon their race, color, national origin, gender and disability under the Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§1981, 1983, the Americans With Disability Act ("ADA"), the United States Constitution, the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL").

The parties conducted discovery in this matter jointly with the case captioned Kevin Hamilton v. City of New York, et al., Civ. No. 18-4657 (NGG)(JO) which raised the corresponding issues with the FDNY's clean shave policy with the addition of claims for religious discrimination.

## STATEMENT OF FACTS

Plaintiffs' respectfully refer the Court to Defendants Local Civil Rule 56.1 Statement of Undisputed Facts (Pl. 56.1) inclusive of the deposition transcripts and exhibits included therein.

## STANDARD

In considering a motion for summary judgment, the Court resolves all ambiguities and draws all reasonable inferences against the moving party. Lindsay v. Ass'n of Prof'l Flight Attendants, 581 F.3d 47, 50 (2d Cir.2009). "Summary judgment is appropriate only 'if the movant

1

shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Kwan v. Schlein, 634 F.3d 224, 228 (2d Cir.2011) (quoting Fed.R.Civ.P. 56(a)); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. A fact is material if it might affect the outcome of the suit under the governing law." Lindsay, 581 F.3d at 50. "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial-whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Liberty Lobby, 477 U.S. at 250, 106 S.Ct. 2505. E.E.O.C. v Bloomberg L.P., 967 F Supp 2d 816, 830 (S.D.N.Y. 2013).

## **ARGUMENT**

I.    Plaintiffs are entitled to summary judgment on their ADA, NYSHRL, and NYCHRL claims for disability discrimination.

A. ADA Claims

"To establish a prima facie case under the ADA, a plaintiff must show by a preponderance of the evidence that: (1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of his disability. Sista v. CDC Ixis N. Am., Inc., 445 F.3d 161, 169 (2d Cir. 2006) (quotations and citations omitted). Under the ADA, a "disability" is defined as (A) a physical or mental impairment that substantially limits one or more of the major life activities of an individual, (B) a record of such impairment, or (C) being regarded as having such an impairment. 42 U.S.C. § 12102(2); Primmer v CBS Studios, Inc., 667 F Supp 2d 248, 257 (SDNY 2009). "A plaintiff

2

sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment." Galabya v. N.Y.C. Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000). "A materially adverse change is a change in working conditions that is more disruptive than a mere inconvenience or an alteration of job responsibilities." Vale v. Great Neck Water Pollution Control Dist., 80 F.Supp.3d 426, 434 (E.D.N.Y. 2015) (internal quotations and citation omitted). "Examples of materially adverse employment actions include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices ... unique to a particular situation." Feingold v. New York, 366 F.3d 138, 152 (2d Cir. 2004).

An employer may also violate the ADA by failing to provide a reasonable accommodation. A plaintiff states a *prima facie* failure to accommodate claim by demonstrating that (1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." McBride v. BIC Consumer Prods. Mfg. Co., 583 F.3d 92, 96 (2d Cir. 2009).

B. NYSHRL

Under NYSHRL, it is unlawful for an employer to discharge or discriminate against an individual because of a disability. N.Y. Exec. Law § 292(21). NYSHRL requires employers to reasonably accommodate disabled employees unless such an accommodation would impose an "undue hardship" on the business.  Id. at § 296(3)(a)-(b). Reasonable accommodation includes actions taken which permit an employee with a disability to perform in a reasonable manner the activities involved in the job or occupation sought or held and include, but are not limited to, provision of an accessible worksite, acquisition or modification of equipment. Id. at § 292(21–e).

C. NYCHRL

NYCHRL makes it unlawful for an employer to discharge or discriminate against an individual because of a disability.  N.Y.C. Admin. Code § 8–107(1)(a). Disability is defined under the NYCHRL as "any physical, medical, mental or psychological impairment, or a history or record of such impairment." Id. at § 8–102(16)(a). "Impairments" include, but are not limited to:problems associated with the neurological system; the musculoskeletal system; the special sense organs and respiratory organs, including, but not limited to, speech organs; the cardiovascular system; the reproductive system; the digestive and genito-urinary systems; the hemic and lymphatic systems; the immunological systems; and the skin. Id. at § 8–102(16)(b)(1). The Court of Appeals for the Second Circuit has explained: New York State courts have noted that, under the Local Civil Rights Restoration Act of 2005, Local Law No. 85 of the City of New York, analysis of NYCHRL provisions must be targeted to understanding and fulfilling what the statute characterizes as the City HRL's uniquely broad and remedial purposes, which go beyond those of counterpart State or federal civil rights laws. In short, the text and legislative history represent a desire that the City HRL meld the broadest vision of social justice with the strongest law enforcement deterrent. See Spiegel v. Schulmann, 604 F.3d 72, 83 (2d Cir. 2010) (internal quotation marks and citations omitted). "The definition of disability under the NYCHRL, which includes 'any physical, medical, mental or psychological impairment,' is broader than the definition of disability in the ADA." Harris v. NYU Langone Med. Ctr., No. 12–cv–0454, 2013 WL 3487032, at *26 (S.D.N.Y. July 9, 2013), report and recommendation adopted as modified, 2013 WL 5425336 (S.D.N.Y. Sept. 27, 2013) (denying defendant's motion to dismiss plaintiff's claim for termination based on disability where "[plaintiff] has alleged sufficient facts to establish a claim of disability discrimination" under NYCHRL).

NYCHRL also mandates that employers provide reasonable accommodations to disabled employees. N.Y.C. Admin. Code § 8–107(15)(a)–(b).  District courts must analyze NYCHRL claims separately and independently from any federal and state law claims and construe the NYCHRL's provisions broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." E.E.O.C. v Bloomberg L.P., 967 F Supp 2d 816, 835 (SDNY 2013)(citations and quotations omitted)

Applied here, the Court must award Plaintiffs summary judgment on each element of their claim. As an initial matter, it is undisputed that the City is a public entity subject to ADA. Tardif v City of New York, 13CV4056, 2017 WL 571016, at *17 (SDNY Feb. 6, 2017).  As such, the first element is met.

Next, the record clearly establishes that the Plaintiffs have a disability. PFB is a medical condition that affects African American men. Pl. 56.1 at ¶¶19, 20. PFB affects the ability of the individuals to care for themselves. Id. at ¶¶18, 33. Moreover, PFB affects a major organ, the skin. Id. PFB causes the skin to have painful bumps, bruising, scarring, abscess, keyloids, and ingrown hairs. Id. at ¶23. PFB is a medical disease described as an inflammatory condition of hair bearing areas. Aboushi Aff. Ex. 17: Serota Report. PFB prevents Plaintiffs from caring for themselves and working. Pl. 56.1 at ¶¶18, 33. "The EEOC has listed 'caring for oneself' as a major life activity, 28 C.F.R. § 41.31(b)(2), and the Second Circuit has defined it as 'encompas[sing] normal activities of daily living[,] including feeding oneself, driving, **grooming**, and cleaning home.'" McCormack v. Long Island R. Co., No. 03 CIV. 6597 (JCF), 2006 WL 490032, at *1 (S.D.N.Y. Feb. 28, 2006). Working is also a major life activity. Here, Plaintiffs could not care for themselves, as they could not groom themselves by shaving. Moreover, by Defendants own admission, Plaintiffs could not work as firefighters or first responders. Where, as here, Plaintiffs are precluded from more than

one type of job within the Department, the Plaintiffs meet the definition of disability are disabled as a matter of law.  Simms v City of New York, 160 F Supp 2d 398, 405 (E.D.N.Y. 2001)("As Plaintiff is precluded from more than one type of job within the Department, the Court finds that Defendants regard Plaintiff as being substantially limited in his ability to work. Accordingly, this Court finds, as matter of law, that Plaintiff is disabled under 42 U.S.C. § 12102(2)(c).")

Moreover, Defendants are estopped from claiming that Plaintiffs' do not have a disability as Defendants provided Plaintiffs' an accommodation for their disability, PFB. Based upon this disability, Defendants provided Plaintiffs' an accommodation to maintain close-cropped facial hair. Pl. 56.1 at ¶¶55, 56, 70-74, 79.

What is more, Defendants' regarded Plaintiffs' as disabled. Indeed, the Defendants' deemed Plaintiff's skin disease as affecting a major life activity: caring for themselves, shaving, and working as full duty firefighters. That is the basis upon which the accommodation was granted.

Additionally, according to Defendants, the condition of PFB was an impediment to Plaintiffs' doing the job of firefighter, the job the Plaintiffs were hired to do and trained arduously to perform. Where, as here, a "Plaintiff is precluded from more than one type of job within the Department, the Court finds that Defendants regard Plaintiff as being substantially limited in his ability to work. Accordingly, this Court finds, as matter of law, that Plaintiff is disabled under 42 U.S.C. § 12102(2)(c)." Simms v City of New York, 160 F Supp 2d 398, 405 (E.D.N.Y. 2001). As in Simms, the Defendants here regarded Plaintiffs as disabled as a matter of law given the fact that Defendants excluded Plaintiffs from more than one type of job within the Department.

The Defendants went so far as having Plaintiffs' placed on light duty, taken out of the firehouses, and reassigned to other jobs that were decidedly not firefighting jobs, such as holding doors open, delivering mail, and delivering equipment. Pl. 56.1 at ¶¶96-98. The Defendants'

decision to radically and completely change the Plaintiffs' job functions, location, and responsibilities, from first responders and firefighter to courier, doorman, or administrative assistant, reveals that the Defendants' believed Plaintiffs were excluded from the actual job that Plaintiffs were hired to perform; fight fires and respond to emergencies. The Defendants' construed Plaintiffs' medical condition of PFB as a reason why Plaintiffs could not be full duty firefighters. The record clearly establishes that Defendants regarded Plaintiffs as having a disability. Finally, it is noteworthy that, "[t]o establish that she is regarded as having a disability, a plaintiff need not "present evidence of how or to what degree [defendants] believed the impairment affected him." Kelly v New York State Off. of Mental Health, 200 F Supp 3d 378, 395 (E.D.N.Y. 2016)(quoting Hilton v. Wright, 673 F.3d 120, 129 (2d Cir. 2012)).

In a nearly identical case, this Court ruled that a firefighter who is designated as light duty by Defendants due to a physical impairment is per se considered disabled by the Defendant City of New York.

Third, Plaintiffs are all qualified for their jobs as firefighters. A "qualified individual with a disability" is defined as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8); See Gilbert v. Frank, 949 F.2d 637, 641–642 (2d Cir. 1991). Each Plaintiff is qualified as they did the job of firefighting with or without an accommodation and performed all of the essential job functions. Indeed, during the accommodation, there were no issues with Plaintiffs' job performance. Since the revocation of Plaintiffs' accommodation, they continue to perform their job functions.

Additionally, Plaintiffs' experts make clear that PFB does not interfere with the ability to engage in firefighting duties. Each Plaintiff can maintain a SCBA without interfering with the seal

and posing no safety hazard to them or others. As such, Plaintiffs are eminently qualified for their position and can perform the essential job functions of fighting fires with or without an accommodation.

Furthermore, for Defendants to show that Plaintiff was not qualified for their jobs, Defendants must present more than speculation as to possible safety concerns posed by Plaintiff's condition. See Dipol v. NYCTA, 999 F.Supp. 309, 315 (E.D.N.Y. 1998). Defendants' must produce evidence demonstrating that Plaintiffs' medical conditions rendered them incapable of performing their job responsibilities. There is no evidence in the record that Plaintiffs could not do their job. In fact the record establishes that Plaintiffs were qualified for their job as they performed their job without any issues related to their accommodation.

The City has not identified any incidents where plaintiffs were injured or caused harm to others while on-duty as a result of her affliction. See Simms v. City of New York, 160 F.Supp.2d 398, 405–06 (E.D.N.Y. 2001) (in finding genuine issue of fact as to whether diabetic firefighter posed direct threat, court stated that **"[d]efendants must present more than speculation as to possible safety concerns posed by"** plaintiff). Jackson v City of New York, CV 06-1835 RRM MDG, 2011 WL 1533471, at *16 *EDNY Mar. 3, 2011), *report and recommendation adopted sub nom.* Jackson v New York, 06-CV-1835 RRM MDG, 2011 WL 1527935 (EDNY Apr. 22, 2011)(emphasis added).

Fourth, the record clearly establishes that the Plaintiffs suffered material adverse employment action. "Examples of materially adverse employment actions include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, [and] significantly diminished material responsibilities ...." Feingold v. New York, 366 F.3d 138, 152 (2d Cir. 2004) (internal quotation marks and citation omitted). Here,

Plaintiffs, who were hired to be first responders and firefighters, and trained for many months for those positions, were placed on light duty, taken out of the firehouse, subject to termination, lost the ability to do mutuals (24 hour shifts), made ineligible for promotion, and lost salary. Pl. 56.1 at ¶¶100, 104-108, 110, 114. Moreover, the very fact that Plaintiffs were designated as light duty and reassigned from the firehouse to administrative duties in and of itself constitutes adverse employment action. See Lee v City of Syracuse, 603 F Supp 2d 417, 440 (N.D.N.Y.2009)("Additionally, because plaintiff was assigned to light duty, which had diminished responsibilities from her pre-administrative leave position, that assignment likewise qualifies as adverse employment action."), abrogated on other grounds by Widomski v State Univ. of New York (SUNY) at Orange, 748 F3d 471 (2d Cir. 2014).

Moreover, this Court has already held in an identical case that Defendants' actions of designating Plaintiffs as light duties and reassigning them from firefighting duties to administrative duties constitutes an adverse employment action. In Simms v City of New York, the Court held that the removal of a firefighter from a position where he suppressed fires and was a first responder to being designated as light duty and doing clerical duties constituted an adverse employment action. Simms v City of New York, 160 F Supp 2d 398, 406 (E.D.N.Y. 2001). The Court in this case faces the exact situation. Plaintiffs here were designated as light duty, removed from the firehouse, prohibited from engaging in firefighting duties, and assigned essentially administrative duties. As the Court held in Simms as a matter of law, the Defendants' conduct here constitutes an adverse employment action.

For substantially the same reasons as Plaintiffs are entitled to summary judgment on their ADA claims, Plaintiffs are also entitled to summary judgment on the corresponding NYCHRL and NYCHRL claims. The NYHRL articulates a more relaxed standard for determining disability. See

Weissman v. Dawn Joy Fashions, 214 F.3d 224, 233 (2d Cir. 2000). NYHRL defines disability as "a physical, mental or medical impairment resulting from anatomical, physiological, genetic or neurological conditions which prevents the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques." N.Y. Exec. Law § 292(21). Plaintiffs' PFB clearly qualifies as a disability under the NYHRL.

D. Failure to Accommodate

Plaintiffs are entitled to summary judgment on their claims that Defendants failed to provide an accommodation.  In order to establish a prima facie case for failure to accommodate, a plaintiff must show that (1) she is a person with a disability under the meaning of the ADA, (2) her employer is a covered entity, (3) the plaintiff could perform the essential functions of her job with an accommodation, and (4) the defendant refused to make such an accommodation. McMillan, 711 F.3d at 125–26 (quoting McBride v. BIC Consumer Prods. Mfg. Co., Inc., 583 F.3d 92, 97 (2d Cir. 2009)).

The NYSHRL and the NYCHRL require that an employer engage a disabled employee in a good-faith interactive process to identify what reasonable accommodations are appropriate. Noel v. BNY–Mellon Corp., 514 F. App'x 9, 10 (2d Cir. 2013).  "New York courts have held that the failure to engage in an interactive process is itself a violation of the law and gives rise to an independent claim." Stuart v. T–Mobile USA, Inc., No. 14–CV–4252, 2015 WL 4760184, at *9 (S.D.N.Y. Aug. 12, 2015).

Here, Plaintiffs satisfy each element of Defendants' failure to accommodate claims. First, each Plaintiff is disabled. Indeed, PFB is a disability that affects the body's largest organ, the skin, and substantially limits the Plaintiffs ability to work and take care of themselves. Second, it is beyond dispute that the Defendant City of New York is a covered entity. Third, Plaintiffs did

10

perform their essential job functions with an accommodation. The record reveals that they responded to fires and performed all of their job functions while they were full duty and having the accommodation of maintaining close cropped facial hair. Lastly, Defendant refused to provide an accommodation, and even went so far as refusing to even consider accommodations. This is notwithstanding the fact that the Defendants at one point provided the accommodation requested, without any hardship, and that the accommodation posed no safety concerns or incidents of hazard.

As to Plaintiffs' NYSHRL and NYCHRL claims, it is dispositive that the Defendants refused to engage in any interactive process with the Plaintiffs. Plaintiffs were given the false choice of having an accommodation and not being firefighters or having no accommodation and maintaining their jobs as firefighters at the expense of their health. The failure to engage in the interactive process is itself a violation of the statutes. Stuart v. T–Mobile USA, Inc., No. 14–CV–4252, 2015 WL 4760184, at *9 (S.D.N.Y. Aug. 12, 2015) (collecting cases). Plaintiffs are entitled to summary judgment on each element and on the claim in total.

II. **Plaintiffs are entitled to Summary Judgment on their Title VII, NYSHRL, and NYCHRL claims related to race, color, national origin, and sex.**

Plaintiffs are entitled to summary judgment on their claims for race, color, national origin, and sex discrimination claims. To state a claim for employment discrimination under Title VII, a plaintiff must establish that: (1) plaintiff is a member of a protected class; (2) plaintiff was qualified for his or her position; (3) plaintiff was subjected to an adverse employment action; and (4) the adverse employment action took place under circumstances giving a rise to an inference of discrimination based on plaintiffs membership in the protected class. El–Din v. N.Y.C. Admin. for Children's Servs., No. 12 Civ. 1133 (PAE), 2012 WL 3839344, at *4 (S.D.N.Y. Sept. 5, 2012)(citing Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 110 (2d Cir. 2010)). "A plaintiff may support an inference of race discrimination by demonstrating that similarly situated

employees of a different race were treated more favorably." <u>Norville v. Staten Island Univ. Hosp.</u>, 196 F.3d 89, 95 (2d Cir. 1999). Claims under NYSHRL and NYCHRL for discrimination are analyzed under the same requirements as Title VII. <u>Pilgrim v McGraw-Hill Companies, Inc.</u>, 599 F Supp 2d 462, 468 (S.D.N.Y. 2009).

Here, Plaintiffs easily establish their right to summary judgment as to each element. First, it is undisputed that Plaintiffs are members of protected classes as Black and African American. Second, Plaintiffs were each qualified for their position as Firemen and were qualified to engage in fire suppression. Third, Plaintiffs were subject to adverse employment action when they were reassigned from the firehouse to administrative duties, designated as light duty, lost their main job function, removed from firehouse, subject to termination, and in constant fear of same.  Lastly, Plaintiffs established that Defendants acted with discriminatory intent. First, PFB predominantly affects African American Men. Serota at ¶¶ 2, 12, 13. Defendants knew that the Policy would target and affect mostly black/African American firefighters, such as each Plaintiff. Pl. 56.1 at ¶¶29-31. Defendants further conceded that the policy would have the effect of preventing African American/black men from applying to be firefighters, and that the existing ranks of black/African American firefighters would be thinned. Plaintiff. Pl. 56.1 at ¶¶31. Defendant Nigro acknowledged this irrefutable fact in his deposition. It is beyond dispute that PFB affects predominantly African American men. Each Plaintiff suffers from PFB. Defendants' policies target Plaintiffs on account of their race, color, national origin, and sex. Second, Defendants have not uniformly applied the Policy to Caucasian men. Indeed, the record establishes that Caucasian men were permitted to maintain facial hair by the Plaintiffs were not. Aboushi Aff. Ex. 22. The record also contains pictures of Caucasian firefighters responding to fires while maintaining facial hair that the Plaintiffs were not permitted to grow. <u>Id</u>. If the Plaintiffs had maintained similar facial hair, they

would have been designated as light duty, deemed unfit for duty, taken out of the firehouse, and relegated to administrative duties where they would lose pay, the ability to be promoted, and subject to termination.

The record is clear that Plaintiffs have met all of the elements to establish their discrimination claims, and thus the Court must award summary judgment in their favor on each claim.

III.    Plaintiffs are entitled to summary judgment on their disparate treatment claims under Title VII, ADA, NYCHRL, and NYSHRL.

To establish a prima facie case of disparate treatment, a plaintiff must show: "(i) membership within a protected group; (ii) satisfactory performance; (iii) an adverse employment action; and (iv) circumstances surrounding the action that give rise to an inference of unlawful discrimination." Hagan v City of New York, 39 F Supp 3d 481, 495 (S.D.N.Y. 2014). To prevail on a discrimination claim under the NYCHRL based on a disparate-treatment theory, an employee "need only show differential treatment—that she [was] treated 'less well'—because of a discriminatory intent." Mihalik v. Credit Agricole Cheuvreux North Am., Inc., 715 F.3d 102, 110 (2d Cir. 2013)(quoting Williams v. N.Y. City Hous. Auth., 61 A.D.3d 62, 872 N.Y.S.2d 27, 39 (2009)). Such differential treatment may take the form of "tangible" employment actions such as "hiring or firing." Id. Forrester v Corizon Health, Inc., 278 F Supp 3d 618, 625-26 (E.D.N.Y. 2017), affd, 752 Fed Appx 64 (2d Cir. 2018)

Plaintiffs satisfy each element of their claim for disparate treatment and are thus entitled to summary judgment on each factor. First, as Black and African Americans, it is beyond dispute that they are members of a protected group. Second, all of the Plaintiffs performed their jobs satisfactorily. Indeed, there was no claim that they could not perform their job or there was any defect in their job performance. Third, the Plaintiffs suffered adverse employment action by being

13

placed on light duty, taken out of the firehouse, not permitted to be firefighters (a job they were hired to do and trained for) and loss of compensation and benefits, such as nigh differentials and the ability to do twenty-four hours shifts (mutuals). The simple fact that they were placed on light duty and barred for being freighters in and of itself qualifies as an adverse employment action. See Simms v City of New York, 160 F Supp 2d 398, 405-06 (E.D.N.Y. 2001).

Lastly, the record establishes that the Defendants had discriminatory intent. First, Defendants knew that there were no problems, safety hazards, or incidents regarding Plaintiff's maintaining close-cropped facial hair. There is simply no legally cognizable basis to prohibit the maintenance of close-cropped facial hair. Second, Defendants concede that they knew their policy would affect almost exclusively Black and African American firefights. Defendants' knew this fact before they enacted the unlawful policy. Moreover, the Defendants knew that the policy would target African American firefighters, current and future, as nearly every request to maintain facial hair came from African American and Black firefighters. Plaintiffs are entitled to summary judgment on their disparate treatment claims.

IV.     Plaintiffs are entitled to summary judgment on their disparate impact claims

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq,* as amended, prohibits intentional discrimination on the basis of race, color, religion, sex, or national origin, as well as employment practices "that are not intended to discriminate but in fact have a disproportionately adverse impact on minorities (known as 'disparate impact')." Ricci v. DeStefano, 129 S.Ct. 2658, 2672, 174 L.Ed.2d 490 (2009). To make out a prima facie case of disparate impact, a plaintiff must (1) identify a policy or practice, (2) demonstrate that a disparity exists, and (3) establish a causal relationship between the two.'" Malave v. Potter, 320 F.3d 321, 325 (2d Cir. 2003) (quoting Robinson v. Metro–North Commuter R.R. Co., 267 F.3d 147, 160 (2d Cir. 2001)). Easterling v

14

State of Connecticut, 783 F Supp 2d 323, 331 (D. Conn. 2011).  If an employment practice which operates to exclude [minorities] cannot be shown to be related to job performance, the practice is prohibited." Id.

Here, Defendants' clean shave policy that requires its members to be clean-shaven violates the law prohibiting employment policies that have a disparate impact on minorities. Defendants knew that their facial hair policy would affect predominantly African American firefighters. What is more, it was clear that all but one of the persons who sought a medical accommodation to the policy were African American firefighters. Finally, Dr. Serota makes clear that PFB affects between 45%-85% of African Americans, and thus, statically speaking, the policy employed by the Defendants effects between 45%-85% of current and prospective African American firefighters. Aboushi Aff. Ex. 17 Serota Report. Extrapolating that fact to its natural consequence, 45%-85% of the African American population would not qualify for the position of FDNY firefighters in light of the Defendants' unlawful policy.  In light of the foregoing, Plaintiffs are entitled to summary judgment on each element of their disparate impact claims.

Additionally, the Defendants do not have a legitimate business reason for the clean-shave policy. Indeed, there is no proof or evidence that Plaintiffs could not perform their jobs with closely cropped facial hair. In fact, the evidence reveals that they aptly performed their jobs with close-cropped facial hair. Moreover, the Defendants did not undertake any meaningful action to evaluate the business necessity of the facial hair policy. They did not do any testing, analysis, inspection of equipment, measurements, measure the facial hair of the Plaintiffs, or obtain medical expertise. Furthermore, as established by the FDNY's own practice of permitting close-cropped facial hair, Dr. Abraham conclusively establishes that the close-cropped facial hair by the Plaintiffs does not interfere with their SCBA. Aboushi Aff. Ex.16 Abraham Report. He also establishes that there are

no safety hazards associated with maintaining close cropped facial hair—a fact conceded by the Defendants as the record reveals that there were no issued of safety or hazards while the Plaintiffs were permitted to maintain facial hair. Id.

Contrary to Defendants' proffered reason for their unlawful policy, OSHA does not prohibit close-cropped facial hair. Indeed, in the most recent opinion interpreting its own regulations, OSHA explicitly stated that the close-cropped facial hair as worn by the Plaintiffs does not violate its rules. Aboushi Aff. Ex. 15 OSHA Statement. That opinion, issued two years before the Defendants revoked all accommodations, conclusively obliterates Defendants' only excuse for not permitting Plaintiffs to maintain close-cropped facial hair. Id. The fact that OSHA has explicitly stated that its rules do not prohibit facial hair as worn by the Plaintiff and the empirical evidence of Plaintiffs maintaining close cropped facial hair and never having a problem conclusively establishes that there is no legitimate business reason for Defendants' facial hair policy.

Finally, the evidence unequivocally reveals that this policy has not been evenly applied to African American/Black and Caucasian firefighter. Testimony of neutral third parties reveal that, while African American firefighters were placed on light duty and taken out of firehouses if they did not shave, Caucasian firefighters were permitted to remain full duty and respond to fires with facial hair. Pl. 56.1 ¶¶120-124. Pictures produced in this matter also establish that Caucasian firefighters were permitted to maintain facial hair and maintain their full duty status responding to fires.

V.      Plaintiffs are entitled to summary judgment on their Aiding and Abetting claims under NYSHRL and NYCHRL.

The NYSHRL makes it unlawful for an employer to discriminate on the basis of, inter alia, race, creed, color, or sexual orientation. See N.Y. Exec. Law § 296. A supervisor is an "employer" for purposes of establishing liability under the NYSHRL if that supervisor "actually participates

in the conduct giving rise to [the] discrimination." <u>Tomka</u>, 66 F.3d at 1317. In addition, the NYSHRL states that it shall be an unlawful discriminatory practice "for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or attempt to do so." N.Y. Exec. Law § 296(6). In <u>Tomka</u>, the court found that this language allowed a co-worker who "actually participates in the conduct giving rise to a discrimination claim" to be held liable under the NYSHRL even though that co-worker lacked the authority to either hire or fire the plaintiff. <u>Tomka</u>, 66 F.3d at 1317.19; <u>See also</u> <u>Feingold v New York</u>, 366 F3d 138, 157-58 (2d Cir. 2004).

The NYCHRL makes it unlawful "[f]or an employer or an employee or agent thereof, because of the actual or perceived ... race, creed ... [or] sexual orientation ... to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment." N.Y.C. Admin. Code § 8–107(1)(a). The same standards of analysis used to evaluate aiding and abetting claims under the NYSHRL apply to such claims under the NYCHRL because the language of the two laws is "virtually identical." <u>Feingold v New York</u>, 366 F3d 138, 158 (2d Cir. 2004).

Applied here, Defendants' Nigro, City of New York, Beecher and Horowitz actually and personally participated in the violations against Plaintiffs by enacting the unlawful policy, revoking Plaintiff's accommodations, physically and visually inspecting their faces, finding them in violation of the clean-shave policy, taking them out of the firehouse, designating them ineligible to being firefighters, denying them benefits, salary, and overtime, and placing them for light duty—with all the attending adverse consequences of doing so. Each Defendant were aware of Plaintiffs' disability as well as the adverse employment actions they aided and abetted, they

17

nonetheless, discriminated against them on that account and subjected them to adverse employment actions.

VI.    Plaintiff is entitled to summary judgment on each element of their Equal Protection and *Monell* Claims.

Once action under color of state law is established, equal protection claim parallel Title VII claim. The elements of one are generally the same as the elements of the other and the two must stand or fall together. See Annis v. County of Westchester, 136 F.3d 239, 245 (2d Cir. 1998) ("In analyzing whether conduct was unlawfully discriminatory for purposes of § 1983, we borrow the burden-shifting framework of Title VII claims."); Jemmott v. Coughlin, 85 F.3d 61, 67 (2d Cir. 1996) (stating that "Title VII law ... is utilized by courts considering § 1983 Equal Protection claims" and recognizing that "several circuits have held that, when § 1983 is used as a parallel remedy with Title VII in a discrimination suit ... the elements of the substantive cause of action are the same under both statutes."). A finding of "personal involvement of [the individual] defendants" in an alleged constitutional deprivation is a prerequisite to an award of damages under Section 1983. Provost v. City of Newburgh, 262 F.3d 146, 154 (2d Cir.2001) (internal quotation marks omitted). Feingold v New York, 366 F3d 138, 159 [2d Cir 2004].

Here, Defendants Nigro, Hurwitz, and Beecher directly participated in the violation of each Plaintiff's equal protection rights. Indeed, Nigro, Hurwitz, and Beecher created the policy revoking accommodations and not affording any consideration of accommodation and continued to impose this policy on the Plaintiffs. Defendants Hurwitz and Beecher were the ones who placed Plaintiffs on light duty and demanded and insisted that they be clean shaven. Defendants Hurwitz and Beecher continue to hold the power to designate any of the Plaintiff's as light duty or in violation of the unlawful policy at any time as they have previously done.

18

The Fourteenth Amendment right to equal protection of the law is "essentially a direction that all persons similarly situated be treated alike." City of Cleburne, Texas v. Cleburne Living Center, 473 U.S. 432, 439 (1985); Disabled American Veterans v. United States Dep't of Veterans Affairs, 962 F.2d 136, 141 (2d Cir. 1992). To establish an Equal Protection violation, plaintiff must show purposeful discrimination directed to an identifiable class. Giano v. Senkowski, 54 F.3d 1050, 1057 (2d Cir. 1995).

Even if no suspect class or identifiable right is implicated, an Equal Protection violation may be found based upon "arbitrary and irrational discrimination" or an allegation of selective treatment in terms of public employment where it is shown that such treatment was motivated by an intention to discriminate based upon impermissible considerations, such as race or by a malicious or bad faith intent to injure the person. See Muller, 187 F.3d at 309; Overhoff v. Ginsburg Development, L.L.C., 2001 WL 533219 *7 (S.D.N.Y. May 16, 2001); Quinn v. Nassau County Police Department, 53 F.Supp.2d 347, 355 (E.D.N.Y.1999). Greco v. Cty. of Nassau, 146 F. Supp. 2d 232, 248 (E.D.N.Y. 2001).

Here, in his deposition, Commissioner Nigro, acknowledged that the revocation of all reasonable accommodations would significantly and disproportionately affect African American fire fighters because PFB is a medical condition effecting 45-85% of African American males. Defendants were aware of the disproportionate effect of this policy and the revocation of reasonable accommodations for African American firefighter suffering from PFB throughout their research and briefings. Aboushi Aff. Ex. 20. Defendants were aware that PFB does not affect Caucasian male firefighters. Id. Thus, Defendants discrimination against Plaintiffs were deliberate and in violation of the Equal Protection Clause.

In the alternative, Defendants decision to revoke all reasonable accommodations for the medicals condition PFB was based upon arbitrary and irrational discrimination and that such treatment was motivated by an intention to discriminate based upon impermissible considerations, such as race, national origin, and disability. For several years, the Plaintiffs submitted applications for exceptions to the clean shave policy. Included in their applications were well-documented letters from their respective physicians and dermatologist stating that they suffered from PFB. Based upon these letters, Defendants found that Plaintiffs were disabled within the meaning of the ADA and were thus permitted to maintain closely cropped facial hair on their cheeks and chin. To ensure Plaintiffs' safety, Defendants required them to undergo fit tests, which required Plaintiffs to place a SCBA mask on their face while a machine gaged the security of the seal of the mask to their face. Plaintiffs each passed the fit test each and every time it was administered, and they were permitted to work as fire fighters including fire suppression. Therefore, Defendant abrupt and baseless decision to revoke Plaintiffs accommodation further violates the Fourteenth Amendment.

Under 42 U.S.C. § 1983, "[e]very person who, under color of any statute, *355 ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." Thus, unlike with ADA claims, Section 1983 applies by its terms to individual "persons" responsible for violating a plaintiff's rights. Furthermore, "[i]f a defendant has not personally violated a plaintiff's constitutional rights, the plaintiff cannot succeed on a § 1983 action against the defendant." Raspardo v. Carlone, 770 F.3d 97, 115 (2d Cir. 2014). The case of Monell v. Department of Social Services, 436 U.S. 658, 690 (1978) "defines municipalities as 'persons' under § 1983." Raspardo,

20

770 F.3d at 115. 3637. However, "[a] municipality can be held liable under Section 1983 only if a plaintiff can show that a municipal policy or custom caused the deprivation of his or her constitutional rights." Marsalis v. Riker's Island Corr. Facility, No. 14–CV–5080 (KAM), 2014 WL 7076058, at *1 (E.D.N.Y. Dec. 15, 2014); Sherman v. Cty. of Suffolk, 71 F. Supp. 3d 332, 354–55 (E.D.N.Y. 2014).

The Second Circuit has long recognized that a plaintiff asserting claims under § 1983 must allege the personal involvement of each individual defendant acting under color of state law." 545 Halsey Lane Properties, LLC v. Town of Southampton, 39 F.Supp.3d 326, 345-46 No. 14–CV– 800 (ADS)(GRB), 2014 WL 4100952, at *18 (E.D.N.Y. Aug. 19, 2014); Back v. Hastings On Hudson Union Free School Dist., 365 F.3d 107, 122 (2d Cir.2004) ("Additionally, '[i]n this Circuit personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'") (quoting McKinnon v. Patterson, 568 F.2d 930, 934 (2d Cir.1977)). Sherman v. Cty. of Suffolk, 71 F. Supp. 3d 332, 356 (E.D.N.Y. 2014).

It is undisputed that the individual Defendants named here were acting under the color of state law. Specifically, Defendants Nigro, Beecher, and Hurwitz, revoked all accommodation for the Plaintiffs and placed them on light duty, with all the attendant adverse employment actions, in spite of their medical condition PFB and their national origin and race. In addition, not only did Nigro Beecher, and Horowitz to revoke Plaintiffs' accommodation and subject them to adverse employment, Plaintiffs remain under constant threat of same if they are observed with facial hair. Moreover, Defendants' Beecher and Horowitz both searched Plaintiffs, feeling their faces and inspecting their medical condition before finding them in violation of the clean shave policy and placing each of them on light duty. Commissioner Nigro acted with deliberately indifference to the Plaintiffs' rights as he was aware that revoking their accommodations would and did

disproportionately affect African American/Black firefighters. At the same time, Caucasian fire fighters were permitted to maintain facial hair on the cheeks and chin without accommodations without suffering any adverse employment actions. Thus, the City of New York is liable for the violations of Plaintiffs constitutional rights under the Fourteenth Amendment.

### <u>Conclusion</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs summary judgment on their Claims for liability and set a trial date to determine damages.

Dated: New York, New York
   August 15, 2019

_____/s/_____
Aymen A. Aboushi, Esq.
Tahanie A. Aboushi, Esq.
The Aboushi Law Firm, PLLC
1441 Broadway, Fifth Floor
New York, N.Y. 10018
Telephone: (212) 391-8500
Facsimile: (212) 391-8508
*Attorneys for Plaintiffs*

To:  Andrea O'Connor, Esq (Via ECF)
   Assistant Corporation Counsel
   100 Church Street, Room 2-104
   New York, New York 10007
   (212) 356-4015
   aoconnor@law.nyc.gov
   *Attorney for Defendants*

22