**FILED**
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★ JAN 30 2020 ★

BROOKLYN OFFICE



UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SALIK BEY, CLYDE PHILLIPS, STEPHEN SEYMOUR, and TERREL JOSEPH | **MEMORANDUM, ORDER, JUDGMENT, and STAY** |
| Plaintiffs, | 18-CV-4655 |
| – against – | |
| CITY OF NEW YORK, DANIEL NIGRO, SHENECIA BEECHER, KAREN HURWITZ, FNDY, JOHN AND JANE DOES 1-10. | |
| Defendants. | |

**Parties:**

For Plaintiffs

**Appearances:**

Tahanie A. Aboushi
The Aboushi Law Firm
1441 Broadway, Ste. 5036
New York, NY 10018
(212) 391-8500
Fax: (212) 391-8508
Email: tahanie@aboushi.com

Aymen A. Aboushi
The Aboushi Law Firm
1441 Broadway, Ste. 5036
New York, NY 10018
(212) 391-8500
Fax: (212) 391-8508
Email: aymen@aboushi.com

For Defendants

Andrea Mary O'Connor
New York City Law Department
100 Church Street, Room 2-104
New York, NY 10007
(212) 356-4015
Fax: (212) 356-1148
Email: aoconnor@law.nyc.gov



1

**JACK B. WEINSTEIN, Senior District Judge:**

## Table of Contents

I.   Introduction ......................................................................................................................... 2

II.   Facts .................................................................................................................................... 3

   A.  Plaintiffs' Condition............................................................................................... 3

   B.  Grooming Policy .................................................................................................... 4

   C.  Fit Test and Accommodation................................................................................. 6

   D.  Revocation of the Accommodation ....................................................................... 7

   E.  Placement on Light Duty ....................................................................................... 8

III.  Summary Judgment Standard ............................................................................................. 8

IV.  ADA Claims........................................................................................................................ 9

   A.  Plaintiffs Entitled to Summary Judgment on Failure-to-Accommodate Claim.................. 9

      1.  Applicable Law ............................................................................................... 9

      2.  Application of Law to Facts ........................................................................... 10

   B.  Plaintiffs Entitled to Summary Judgment on Disability Discrimination Claim ................ 18

      1.  Applicable Law ............................................................................................. 18

      2.  Application of Law to Facts ........................................................................... 18

V.   Disparate Treatment......................................................................................................... 20

      1.  Applicable Law ............................................................................................. 20

      2.  Application of Law to Facts ........................................................................... 21

VI.  Disparate Impact ............................................................................................................. 22

      1.  Applicable Law ............................................................................................. 22

      2.  Application of Law to Facts ........................................................................... 22

VII.  Municipal Liability .......................................................................................................... 23

      1.  Applicable Law ............................................................................................. 23

      2.  Application of Law to Facts ........................................................................... 24

VIII. Conclusion ...................................................................................................................... 24

## I.    Introduction

Salik Bey ("Bey"), Clyde Phillips ("Phillips"), Steven Seymour ("Seymour") and Terrel Joseph ("Joseph") (collectively, "Plaintiffs") are African American men who were employed as firefighters by the Fire Department of the City of New York ("FDNY" or "Department") when the

relevant events began. Amended Complaint ("Am. Compl.") ¶ 9, ECF No. 19. They suffer from Pseudofolliculitis Barbae ("PFB")—a physiological condition that causes disfigurement of the skin in the hair-bearing areas of the chin, cheek, and neck. *Id.* at ¶¶ 22-23.

Plaintiffs sue the City of New York, the FDNY, FDNY Commissioner Daniel Nigro ("Nigro"), Shenecia Beecher ("Beecher"), Karen Hurwitz ("Hurwitz") and unknown FDNY Officers (collectively, "Defendants"). Alleged by Plaintiffs is that they were "disabled" and their rights were violated by Defendants when the FDNY rescinded an appropriate accommodation exempting Plaintiffs from the Department's standards for personal grooming ("Grooming Policy"). *See generally* Am. Compl., ECF No. 19.

On the theory and facts of the "failure to accommodate" and disability discrimination claims under the Americans with Disabilities Act ("ADA"), Plaintiffs are entitled to summary judgment against Defendants and to reinstatement of the accommodation previously in effect. No other legal or factual theories support a judgment for Plaintiffs. Defendants' motions for summary judgment are denied with respect to these claims only.

Granted are Defendants' motions for summary judgment or dismissal as to Plaintiffs' claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 1981, 1983, and the First, Fifth and Fourteenth Amendments of the United States Constitution. Plaintiffs' New York State Human Rights Law ("NYSHRL") and New York City Human Rights Law ("NYCHRL") claims are dismissed without prejudice.

## II. Facts

### A. Plaintiffs' Condition

Pseudofolliculitis Barbae is a skin condition that affects approximately 45% to 85% of African American men. Am. Compl. ¶¶ 22-23, ECF No. 19. It is exacerbated by shaving with a

razor down to the skin. *Id.* The medical assessment of Plaintiffs' expert, Dr. Marc Serota, recounts their experience with the condition:

> Mr. Phillips began having symptoms of [PFB] around 2004. Prior treatments have included oral doxycycline, topical benzoyl peroxide, topical clindamycin gel and eliminating shaving with a razor/using an electric clipper…
>
> Mr. Bey states he has had [PFB] since he began shaving. Treatment has included avoiding razor blades for shaving. Prior treatment has included topical clindamycin 1% lotion and topical salicylic acid washes…
>
> Mr. Seymour has had [PFB] since he was a teenager. Prior treatments have included topical clindamycin solution, topical benzoyl peroxide and topical tretinoin…
>
> Mr. Joseph began to recognize his [PFB] when he began growing significant facial hair around age 23. He has seen dermatologists who have recommended avoiding using razors for shaving. He has also been treating with topical clindamycin 1% solution and pads. He has also tried laser hair removal. He has a history of keloid scarring.

Dr. Marc Serota Medical Report ("Serota Report") at 5-6, ECF No. 48-17.

While it is medically recommended that individuals with PFB should avoid shaving with a razor, Plaintiffs allege, and have shown, that the FDNY now requires them to do the opposite to work as full duty firefighters.

B. Grooming Policy

There are two regimes relevant to the case: one from August 2015 to December 2017 when firefighters could have maintained facial hair in the chin, cheek and neck area if it did not cause leakage around the mask's seal ("prior accommodation"); and one now in effect where a full duty firefighter must shave with a razor down to the skin or be given desk work ("present non-accommodation").

At issue is the FDNY's current safety standards for personal grooming ("Grooming Policy" or "clean shave policy"), which overruled the prior accommodation in favor of the status quo. Am.

Compl. ¶ 28, ECF No. 19. The Grooming Policy is modeled on the Occupational Safety and Health Administration's ("OSHA") Respiratory Protection Standard ("RPS"). Defendant's Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1 ("Def. Statement of Facts") ¶¶ 6-8, ECF No. 38.

Under the RPS, firefighters entering an area immediately dangerous to life or health ("IDLH") are required to wear a self-contained breathing apparatus ("SCBA" or "smoke mask"). Ex. A, U.S. Dep't of Labor, Occupational Safety & Health Admin., Facial Hair and Respirator Fit, Standard Interpretation Letter (April 1, 2011) at 2, ECF No. 37-1; Def. Statement of Facts ¶ 6, ECF No. 38.

### FDNY-Mandated "Smoke Mask"



FDNY-Mandated "Smoke Mask", Ex. A, ECF No. 58. Current FDNY regulations provide that "smoke masks" with tightfitting facepieces shall not be worn by full duty firefighters with hair in

the chin area. Def. Statement of Facts ¶¶ 11-13, ECF No. 38. Defendants contend the RPS-based regulations are for the protection of Plaintiffs against breathing noxious gases.

## C. Fit Test and Accommodation

Because of their skin condition, Plaintiffs sought a medical accommodation from the Department, allowing them to maintain closely-cropped facial hair, uncut by a razor. Am. Compl. ¶¶ 34-35, ECF No. 19. Before the requests were granted, Plaintiffs were subjected to a "Fit Test". A Fit Test is a standard test designed by OSHA to "ensure[ ] that the face piece of the SCBA gets the proper seal so that ... what the member is breathing is the air from the tank and not anything that may be contaminated." Commissioner Daniel Nigro Deposition ("Nigro Dep.") at 29:14-19, ECF No. 48-14.

Observing no leakage from the FDNY-approved mask when it was worn by individuals like Plaintiffs with closely-cropped facial hair, the requested accommodation was granted by the FDNY. Bey's accommodation was granted on August 27, 2015; Phillips' on August 3, 2015; Seymour's on August 28, 2015; and Joseph's on January 3, 2018. Def. Statement of Facts ¶¶ 30-33, ECF No. 38. Subsequent Fit Tests administered by the Department concluded that the medical accommodation did not compromise the safety or productivity of any individual plaintiff. By Defendants' admission, the accommodation was fully applicable for two and a half years before the present non-accommodation regime. There were no reports that it increased the risks to firefighters or civilians:

> The Court: [D]uring that two and a [half] year period, there was no greater risk than there would have been had the Department required a clean shave.
>
> [Attorney for Defendants]: Your Honor, I believe, based on, based on federal regulations, the research conducted by the Fighter Department, there was a greater risk.

The Court: In what way? Was there anybody who was at risk according to your records?

[Attorney for Defendants]: There [were] no safety incidents reported, Your Honor, as a result of the accommodations, no.

December 16, 2019 Summary Judgment Evidentiary Hearing ("Evidentiary Hearing") at 14: 21-15-5.

### D. Revocation of the Accommodation

After a review of the Department's safety standards initiated by then-FDNY Acting Chief of Safety Joseph Jardin, the medical accommodation was revoked. *See generally*, Joseph Jardin Deposition ("Jardin Dep."), ECF No. 48-9. By a letter dated May 9, 2018, Plaintiffs were notified that maintaining closely-cropped facial hair—between 1 millimeter and a quarter inch long—would no longer be in compliance with the Grooming Policy. Am Compl. ¶ 68, ECF No. 19. The sixteen full duty FDNY firefighters, including Plaintiffs, who had been covered under the prior accommodation were directed to report to the Bureau of Health Services ("BHS"). BHS is the FDNY agency responsible for administering Fit Tests and evaluating employees' duty status. Def. Statement of Facts ¶¶ 25, 56, ECF No. 38. The agency ruled on whether Plaintiffs could continue working as full duty firefighters with the FDNY in light of the Grooming Policy being imposed.

The following criteria were set by the FDNY: If Plaintiffs shaved all facial hair in the chin area, they would maintain their status as full duty firefighters; otherwise, they would be placed on light duty. Def. Statement of Facts ¶ 59, ECF No. 38. When summoned to BHS' office, Plaintiffs were instructed by defendants Dr. Karen Hurwitz and Dr. Shenecia Beecher—FDNY Deputy Chief Medical Officers—to shave their beards in accordance with the new Grooming Policy, or be reassigned to light duty. Plaintiffs did not initially comply with the new shaving mandate. *Id.* ¶ 69.

### E. Placement on Light Duty

Bey, Phillips, Seymour and Joseph were placed on light duty on May 22, 2018, each assignment lasting no longer than 28 days. *Id.* ¶¶ 69-72. Bey yielded to the FDNY's shaving mandate soon after it became effective; he was on light duty for one day, having been reinstated to full duty status on May 23, 2018. *Id.* ¶ 69. Also upon compliance with the FDNY's new regulations, Seymour was reinstated as a full duty firefighter on June 1, 2018, Joseph on June 7, 2018 and Phillips on June 19, 2018. *Id.* ¶¶ 70-72. Plaintiffs' claims for employment discrimination arise from the FDNY's decision to rescind the medical accommodation previously in effect and Plaintiffs' subsequent placement on light duty.

## III. Summary Judgment Standard

Summary judgment is appropriate where the pleadings and admissible evidence show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (internal quotation marks and citations omitted). "A fact is 'material' for these purposes when it might affect the outcome of the suit under governing law." *Id.* (internal quotation marks and citations omitted). The burden of demonstrating the absence of a genuine issue of material fact is carried by the moving party.

To rule on a summary judgment motion, a reviewing court must construe the facts "in the light most favorable to the non-moving party," *Overton v. New York State Division of Military and Naval Affairs*, 373 F.3d 83, 89 (2d Cir. 2004), and resolve all reasonable inferences "in favor of the party against whom summary judgment is sought." *Security Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004). The court's task at this phase of the litigation is not to decide issues of material fact, but to determine whether any exist. *See Gallo v.*

*Prudential Residential Servs., L.P.*, 22 F.3d 1219, 1224 (2d Cir. 1994). Should both sides seek summary judgment, as here, the district court is "required to assess each motion on its own merits and to view the evidence in the light most favorable to the party opposing the motion, drawing all reasonable inferences in favor of that party." *Wachovia Bank, Nat'l Ass'n v. VCG Special Opportunities Master Fund, Ltd.*, 661 F.3d 164, 171 (2d Cir. 2011).

## IV. ADA Claims

### A. Plaintiffs Entitled to Summary Judgment on Failure-to-Accommodate Claim

#### 1. Applicable Law

The ADA provides:

> No [employer covered by the Act] shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a). Individuals claiming the Act's protection must prove that the condition at issue qualifies as a disability within the meaning of the statute.

The term "disability" is defined as follows:

> (A) a physical or mental impairment that substantially limits one or more major life activities of such individual;
>
> (B) a record of such an impairment; or
>
> (C) being regarded as having such an impairment...

42 U.S.C § 12102(1). "The definition of disability in [the ADA] shall be construed in favor of broad coverage of individuals under [the ADA], to the maximum extent permitted by the terms of [the ADA]." *Id.* at § 12102(4)(A).

"An employer violates the ADA ... when it fails to 'mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who

is an applicant or employee,' unless the employer can establish that the accommodations would 'impose an undue hardship.'" *Jackan v. New York State Dep't of Labor*, 205 F.3d 562, 566 (2d Cir. 2000) (quoting 42 U.S.C. §12112(b)(5)(A)). "A 'qualified individual' is 'an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds.'" *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 96 (2d Cir. 2009) (quoting 42 U.S.C. §12111(8)).

Failure-to-accommodate claims are analyzed under the burden-shifting framework set out in *McDonell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Heyman v. Queens Village Comm. for Mental Health for Jamaica Comm. Adolescent Program, Inc.*, 198 F.3d 68, 72 (2d Cir. 1999). To establish a *prima facie* failure-to-accommodate case, "an employee must show that: '(1) [he] is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, [the employee] could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations.'" *Noll v. Int'l Bus. Machs. Corp.*, 787 F.3d 89, 94 (2d Cir. 2015) (quoting *McBride*, 583 F.3d at 97).

A reasonable accommodation is one that enables a disabled employee to perform the essential functions of a job. *See Davis v. New York City Health and Hosps. Corp.*, 508 Fed. App'x. 26, 29 (2d Cir. 2013) (the ADA "affords a right to such reasonable accommodations as will allow the disabled individual to perform [essential] functions."). Should the accommodation provided be "plainly reasonable," "[t]here is no need to engage in further burden-shifting to consider whether the employee's requested accommodation would have been reasonable." *Noll*, 787 F.3d at 94 (citation omitted).

2. Application of Law to Facts

Turning to Plaintiffs' *prima facie* case, prongs two and three are satisfied: it is uncontested that the FDNY is an employer covered under the ADA and that Plaintiffs could perform the job at issue if reasonably accommodated. The parties disagree on the first and fourth prongs: whether Plaintiffs have an ADA-qualifying disability, and whether Defendants provided a "reasonable accommodation" by assigning Plaintiffs to "light duty". The court considers each issue in turn.

### a. Plaintiffs are Disabled within the Meaning of the ADA

A reasonable trier of fact could only find that PFB is a disability under subsection A of the definitional section of the ADA. While Defendants challenge other aspects of Plaintiffs' failure to accommodate claim, they concede that PFB is a physical impairment. The inquiry into whether PFB is an ADA-qualifying disability narrows to two questions: (1) whether self-care or working is a major life activity, and (2) whether Plaintiffs experienced substantial limitations in carrying out either activity. *See Bragdon v. Abbott*, 524 U.S. 624, 637, 118 S. Ct. 2196, 2204, 141 L. Ed. 2d 540 (1998) ("The [ADA] is not operative, and the definition not satisfied, unless the impairment [substantially limits] a major life activity.").

### i. Grooming is a Major Life Activity

The first question is straightforward. Long recognized as a major life activity under the ADA is self-care. A year after the ADA was passed, the implementing federal regulations included "caring for oneself" among the non-exhaustive list of "major life activities." *See* 29 C.F.R. § 1630.2(i). The Supreme Court followed suit. *See, e.g., Sutton v. United Air Lines*, 527 U.S. 471, 480, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999) (examples of "major life activities" include "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working.").

### ii. Plaintiffs are Substantially Limited in Grooming

Whether PFB substantially limits Plaintiffs' ability to groom is a closer question. The EEOC sets out the following considerations to guide the inquiry: "(i) The nature and severity of the impairment; (ii) The duration or expected duration of the impairment; and (iii) The permanent or long-term impact, or the expected permanent or long-term impact of or resulting from the impairment." 29 C.F.R. § 1630.2(j)(2). A plaintiff whose impairment is intermittent or temporary will not be treated as substantially limited in a major life activity within the meaning of the ADA. *See Tojzan v. New York Presbyterian Hosp.*, No. 00-CV-6105, 2003 WL 1738993, at *8 (S.D.N.Y. Mar. 31, 2003) ("Since [plaintiff's] physical impairments are episodic and are not consistently severe, they do not substantially limit a major life activity. Thus, [plaintiff] is not disabled within the meaning of the ADA and consequently cannot establish a *prima facie* case of disability discrimination.").

The evidence produced is sufficient for a jury to conclude that PFB substantially limits Plaintiffs' ability to groom. The assessment of Plaintiffs' medical expert, Dr. Marc Serota, is helpful. Dr. Serota opined that "[PFB] is a medical condition that affects the patient's ability to care for themselves. By shaving flush to the skin (irrespective of with a razor or electric shaver), the patient is exposed to inflammatory, draining, painful nodules which leads to an inability to groom himself, exposing the patient to infection and leading to disfiguring lifelong scarring." Serota Report at 3, ECF No. 48-17. Plaintiffs have established that PFB substantially impedes their ability to shave.

Defendants challenge Plaintiffs' substantial limitation theory on the basis that "Plaintiffs do not assert that they are completely precluded from shaving. Rather, they claim that they only cannot shave with a razor down to the skin because of PFB." Def. Mem. of Law at 25, ECF No. 39. The problem for Defendants is that "substantial limitation" does not only mean that an

individual is "[u]nable to perform a major life activity that the average person in the general population can perform." 29 C.F.R. § 1630.2(j)(1)(i). "Substantial limitation" also contemplates situations where an individual is "[s]*ignificantly restricted as to the condition, manner or duration* under which an individual can perform a particular major life activity as compared to the condition, manner, or duration *under which the average person in the general population can perform that same major life activity.*" 29 C.F.R. § 1630.2(j)(1)(ii) (emphasis added). Defendants' contention that "substantial limitation" envisions a total restriction on performing an activity misinterprets the substantive requirements of proving a disability under the ADA.

As demonstrated in their submissions, PFB significantly restricted the manner in which Plaintiffs shaved. Dr. Serota's medical report also noted that PFB "is most prevalent in African American men with an estimated prevalence between 45 and 83 percent of African American men … 3 percent or less of Caucasian men who shave facial hair develop pseudofolliculitis barbae." Serota Report at 3, ECF No. 48-17. From Dr. Serota's assessment, it is reasonable to conclude that the limitations in grooming experienced by Plaintiffs are not likely to be encountered by the average person, and thus fall within the interpretative boundaries of the meaning of "substantial limitation."

Given this conclusion, Plaintiffs need not rely on their argument that they are substantially limited in working to show that they are statutorily disabled; the court does not reach that issue.

b. Defendants Failed to Provide a Reasonable Accommodation

Having established that PFB is an ADA-qualifying disability, remaining is the question of whether a reasonable trier of fact could find that the FDNY refused to provide a reasonable accommodation. The court answers yes. Defendants cite two inapposite cases—*Cheung v. Donahoe*, No. 11-CV-0122, 2016 WL 3640683 (E.D.N.Y. June 29, 2016) and *King v. Town of*

*Wallkill*, 302 F. Supp. 2d 279 (S.D.N.Y. 2004). *See* Def. Mem. at 28, ECF No. 39. And argue that the cases illustrate reassignment to "light duty" was a reasonable accommodation for Plaintiffs. *Id.* Defendants' argument and reliance on *Cheung* fails for the reason that light duty in that case entailed similar, albeit reduced responsibilities for the plaintiff, i.e., shorter hours during the work day. *King* is not helpful because the plaintiff in that case requested a permanent light duty assignment to accommodate his ADA-qualifying disability. Here, Plaintiffs were involuntarily given desk work—responsibilities markedly different from the expected range of activities of a full duty firefighter.

Ample evidence in the record indicates that the essential function of the job Plaintiffs were hired to do was to respond to fires and other emergencies—an admired position of service to the public. Niall McCarthy, *America's Most Prestigious Professions in 2016*, FORBES (Mar. 31, 2016, 8:12 AM), https://www.forbes.com/sites/niallmccarthy/2016/03/31/americas-most-prestigious-professions-in-2016-infographic/#229d294e1926 (The job of a firefighter is viewed as prestigious by 80 percent of adults). By contrast, the assignment to "light duty" was an empty vessel of opportunities to carry out these tasks. Commissioner Nigro's testimony on this point is illuminating:

> Q: In any situation … can someone on light duty be permitted to fight fires?
>
> A. No.
>
> Q: So essentially the reason why they became … firefighter[s] and went through the whole process, they wouldn't be able to perform the job they were hired to do, correct?
>
> A: For those, and I assume most of our members do enter this job for that purpose, although we do have people that may have a different mindset, but *the vast majority want to be in firehouses fighting fires and they would therefore be unable to do it as a light duty member.*
>
> Q: They would not be permitted to do the job for which they were hired which is

to fight fires, correct?

A: Well, they would not be able to do that particular job. Yes, that's correct.
Nigro Dep. at 89:3- 90:2, ECF No. 48-14 (emphasis added).

Unsurprisingly, "the vast the majority of [full duty firefighters] want to be in firehouses fighting fires." *Id.* at 89: 16-18. An accommodation allowing Plaintiffs to put their lives at stake to fight fires and protect the public from dangers, rather than seeming to shirk these responsibilities, would be reasonable. Here, placement on "light duty" effectively demoted Plaintiffs to "second-rate" firefighters. "The law [in the Second Circuit Court of Appeals] categorically holds that such an accommodation, which would eliminate an essential job function, is not reasonable." *Francis v. Wyckoff Heights Med. Ctr.*, 177 F. Supp. 3d 754, 771 (E.D.N.Y. 2016) (citing *Shannon v. N.Y.C. Transit Auth.*, 332 F.3d 95, 100 (2d Cir. 2003)).

Plaintiffs have established a *prima facie* failure-to-accommodate case.

### i. Undue Hardship

The more difficult question confronting the court is whether it would be an undue hardship on the FDNY to allow the accommodation requested by Plaintiffs. "'Undue hardship'... requires a detailed showing that the proposed accommodation would 'requir[e] significant difficulty or expense' in light of specific enumerated statutory factors." *Rodal v. Anesthesia Group. of Onondaga, P.C.*, 369 F.3d 113, 121-22 (2d Cir. 2004) (citations omitted). No such showing has been made by Defendants.

On the evidence produced, a reasonable trier of fact would find that the accommodation previously in effect posed no undue hardship on the fire department:

> Q: In terms of hardship, the fact that these individuals were permitted to grow some facial hair as a result of their accommodations before they were revoked, did that cause any hardship on the department, the fact that they were permitted to grow some facial hair and be full duty firefighters?

[Commissioner]: Not that I'm aware of.

Q: It doesn't cost the fire department anything to let these individuals maintain some facial hair, correct?

[Commissioner]: Well, it would only cost us something if they subsequently had a problem at a fire and either – the ultimate problem of being affected by a toxic atmosphere, that would affect us. So I think we were – felt we were protecting ourselves and the members from that potential.

Q: My question to you is then, these firefighters that were receiving accommodations, them growing some facial hair, did that cost the department anything?

[Commissioner]: Did it? No.

Nigro Dep. at 50:10-51:10, ECF No. 48-14. Defendants now argue that that same accommodation—permitting Plaintiffs to maintain closely-cropped facial hair uncut by a razor— is an undue hardship because it would require the FDNY to be "[non]compliant with the requirements of OSHA and NIOSH and the guidelines set forth by the NFPA." Def. Mem. of Law at 29, ECF No. 39. The court is not persuaded.

The only development of significance from when the prior accommodation went into effect, in August 2015, to now is a dispute as to the proper reading of OSHA's Respiratory Protection Standard ("RPS"). RPS provides, in relevant part:

> The employer shall not permit respirators with tight-fitting facepieces to be worn by employees who have:
>
> Facial hair that comes between the sealing surface of the facepiece and the face or that interferes with valve function; or
>
> Any condition that interferes with the face-to-facepiece seal or valve function.

29 CFR 1910.134(g)(1)(i)(A)-(B). Defendants cite the plain reading of the statute in support of their claim that the new shaving mandate is warranted:

> [T]he regulations, the plain reading is quite clear that *an individual must be clean shaven where there is, where the mask seals.* It appears from plaintiffs' motion that

16

they interpret that language to mean that you can have facial hair so long as it doesn't interfere with the seal. That is not the plain reading of the statute. The plain reading of the statute prohibits facial hair that is between the sealing surface and the skin. And I understand that is a difference of interpretation, but ... it's not a reasonable interpretation to say that OSHA permits closely cropped facial hair where the respirator seal touches the skin.

Evidentiary Hearing, December 16, 2019, 24: 8-19 (emphasis added). Defendants' undue hardship defense is foiled by OSHA's own interpretation of RPS. By a letter dated May 9, 2016, OSHA interpreted the relevant RPS provision as clearing the way for Plaintiffs to maintain facial hair that does not protrude under the respirator seal:

The Respiratory Protection standard, paragraph 29 CFR 1910.134(g)(1)(i)(A), states that respirators shall not be worn when facial hair comes between the sealing surface of the facepiece and the face or that interferes with valve function. *Facial hair is allowed as long as it does not protrude under the respirator seal, or extend far enough to interfere with the device's valve function.* Short mustaches, sideburns, and small goatees that are neatly trimmed so that no hair compromises the seal of the respirator usually do not present a hazard, and, therefore, do not violate paragraph 1910.134(g)(1)(i).

May 9, 2016 OSHA Interpretative Letter at 2, ECF No. 48-15 (emphasis added).

On the evidence presented, it is reasonable to conclude that the instrument of authority governing the personal grooming standards for full duty FDNY firefighters is OSHA's interpretation. *See* Aditya Bamzai, "Delegation and Interpretive Discretion: *Gundi, Kisor,* and the Formation and Future of Common Law, 133 HARV. LAW REV. 164, 199 (2019) ("[R]egime of deference to agencies' construction of their own regulations").

Defendants admit that no heightened safety risk to firefighters or the public was presented by the accommodation previously in effect. Two and a half years passed without incident, and Plaintiffs continued to perform their jobs satisfactorily. The FDNY's decision to abandon the prior accommodation was not based on any actual safety risks to firefighters or the public. Rather,

driving the calculus was bureaucracy. Defendants cite no case law indicating that such bureaucratic considerations are a viable undue hardship defense; the court declines to so find.

Plaintiffs are entitled to summary judgment on the failure to accommodate claim and to reinstatement of the prior accommodation. Plaintiffs' claims for failure to accommodate under State and City law are dismissed without prejudice and may be pursued elsewhere at Plaintiffs' option.

### B. Plaintiffs Entitled to Summary Judgment on Disability Discrimination Claim

#### 1. Applicable Law

To survive a motion for summary judgment on a disability discrimination claim under the ADA, a plaintiff must establish a *prima facie* case by showing: "(1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of his disability." *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161,169 (2d Cir. 2006) (citations omitted).

The first and third elements of Plaintiffs' *prima facie* case are undisputed: the FDNY is subject to the ADA and Plaintiffs are qualified to work as full duty firefighters. With respect to the second element, Defendants repeat their argument that Plaintiffs are not disabled within the meaning of the ADA; that argument is rejected. The fourth element is satisfied because Plaintiffs contend properly that they suffered adverse employment action.

#### 2. Application of Law to Facts

An adverse employment action is "a 'materially adverse change' in the terms and conditions of employment." *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (citations and quotations omitted). Defendants challenge Plaintiffs' adverse employment action

claim primarily on the grounds that each plaintiff was on "light duty" for no longer than 28 days. *See* Def. Mem. of Law at 14, ECF No. 39; *see also Leget v. Henderson*, No. 99-CV-3636, 2001 WL 43615 (S.D.N.Y. Jan. 18, 2001) (finding that plaintiff's three-week involuntary transfer to another position—where no change in salary, title, or benefits occurred—did not constitute adverse action). Defendants' argument fails because it improperly circumscribes the "adverse employment action" analysis.

The Second Circuit Court of Appeals has observed that "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, *significantly diminished material responsibilities, or other indices unique to a particular situation*" can give rise to an adverse employment action. *Feingold v. New York*, 366 F.3d 138, 152 (2d Cir. 2004) (emphasis added). Given the record, it must be concluded that Plaintiffs were subjected to adverse employment action by the FDNY.

Against the wisdom of medical expertise, the grooming arrangements mandated by Defendants required Plaintiffs to give up proper grooming practices. *See* Serota Report at 3, ECF No. 48-17 ("It is a scientific probability that by requiring a patient who suffers from PFB to shave flush to the skin [ he] will develop any or all of the following: papules, hyperpigmentation, draining nodules, scarring or permanent disfigurement."). To protect themselves from permanent scarring or disfigurement, Plaintiffs initially refused to comply with the new shaving mandate. Finding their noncompliance unacceptable, Plaintiffs were involuntarily transferred to "light duty"; administrative tasks became their entire work-world. It was only after Plaintiffs yielded to the FDNY's shaving mandate—jeopardizing their physical well-being—that they were reinstated to full duty status.

In effect, the fire department's new shaving mandate presented Plaintiffs with an objectionable "take it or leave it" proposition: shave down to the skin with a razor and risk permanent injury, or be reassigned to light duty. Placement on light duty, although temporary, was inarguably adverse to Plaintiffs. A blow to those who visualize themselves as public servants, Plaintiffs were forced to eschew a highly-admired and self-fulfilling aspect of their work as firefighters; they endured significantly diminished responsibilities and tangibly worse working conditions. This establishes that they were subjected to adverse employment action and satisfies the fourth element of Plaintiffs' *prima face* case. *Ward v. Shaddock*, No. 14-CV-766, 2016 WL 4371752, at *5 (S.D.N.Y. Aug. 11, 2016) ("[T]he receipt of undesirable assignments must be accompanied by a material detriment to an employee's working conditions to constitute an adverse employment action.") (citations omitted). Plaintiffs are entitled to summary judgment on the disability discrimination claim.

## V.  Disparate Treatment

### 1. Applicable Law

"Title VII ... prohibits various forms of employment discrimination on the basis of race, color, religion, sex, or national origin." *E.E.O.C. v. Bloomberg L.P.*, 967 F. Supp. 2d 816, 832 (S.D.N.Y. 2013) (quotation marks and citation omitted). Where a Title VII plaintiff alleges that the employer's action was a pretext for intentional discrimination based on race, color, national origin, and gender, the *McDonnell Douglas* three-part burden-shifting framework applies. *See McDonell Douglas Corp.*, 411 U.S. at 792-93.

The plaintiff must make out a *prima facie* case of discrimination, which requires showing: (1) he is a member of a protected class; (2) who is qualified for the job at issue; (3) who suffered an adverse employment action; (4) under circumstances giving rise to an inference of

discrimination. *See Brown v. Coach Stores, Inc.*, 163 F.3d 706, 709 (2d Cir. 1998) (quoting *McDonnell Douglas Corp.*, 411 U.S. at 802.

### 2. Application of Law to Facts

Plaintiffs' disparate treatment claim fails. Alleged by Plaintiffs is that they were treated differently than Caucasian firefighters who, without accommodations, were allegedly allowed to maintain facial hair despite the FDNY's clean shave policy. *See* Pl. Mem. of Law at 17, 21, 27, ECF No. 42. "If a plaintiff relies on evidence that he was treated less favorably than employees outside of his protected group to raise an inference of discriminatory intent, he must establish that he was 'similarly situated in all material respects' to those employees." *Smith v. City of New York*, 385 F. Supp. 3d 323, 338 (S.D.N.Y. 2019) (quoting *Mandell v. Cty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003)). Plaintiffs have not produced evidence showing that they were similarly situated to the unidentified Caucasian firefighters they allude to. By focusing solely on white individuals employed by the FDNY as full duty firefighters who were allegedly permitted to maintain facial hair, Plaintiffs mistakenly leap to the conclusion that they were subjected to disparate treatment.

As further proof that an inference of discrimination can be drawn from Defendants' conduct, Plaintiffs reference deposition statements in which Defendants purportedly acknowledged that their "policy would affect almost exclusively Black and African American firefight[ers]," ignoring the context in which the statements were made. Pl. Mem. of Law at 19, ECF No. 42. Specifically, Commissioner Nigro stated that the decision to revoke the clean shave policy was "painful" because individuals receiving accommodations, like Plaintiffs, "were people we had trained who graduated from [firefighter Academy] and who were serving the department and the City that would now possibly be unable [to]." Nigro Dep. at 41:11-20, ECF No. 48-14. Without more, the self-serving statements by Plaintiffs about Defendants' knowledge during the relevant time are

insufficient to permit an inference of intentional discrimination under Title VII. Defendants are entitled to summary judgment on this claim.

## VI. Disparate Impact

### 1. Applicable Law

Disparate impact claims "involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity." *Int'l Bhd. Of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977). As with disparate treatment claims, Title VII disparate impact claims are analyzed using the burden-shifting scheme adopted in *McDonell Douglas. See McDonnell v. Schindler Elevator Corp.*, No. 12-CV-4614, 2014 WL 3512772, at *4 (S.D.N.Y. July 16, 2014).

To make out a *prima facie* case of disparate impact, a plaintiff must (1) identify a facially neutral practice or policy; (2) demonstrate that a disparity exists; and (3) establish a causal relationship between the two. *See Chin v. Port Auth. of New York and New Jersey*, 685 F.3d 135, 151 (2d Cir. 2012).

### 2. Application of Law to Facts

Plaintiffs purport to assert a claim that the FDNY's "clean shave policy" was unlawful because it imposed a disparate impact on African American male firefighters such as themselves. *See* Pl. Mem. of Law at 20, ECF No. 42. This claim fails.

The problem with these allegations is that they indicate Plaintiffs are actually alleging intentional efforts by the FDNY to "thin [] the ranks of Black/African American firefighters." Def. Mem. of Law at 31 (citing Am. Compl. 1, ¶157.), ECF No. 39. Specifically, alleged is that "Defendants *knew* that their facial hair policy would affect predominantly African American firefighters," and that "it was *clear* that all but one of the persons who sought a medical

accommodation to the policy were African American firefighters." Pl. Mem. of Law at 20, ECF No. 42 ("emphasis added").

The court is mindful that "there is nothing inherently inconsistent in advancing both disparate treatment and disparate impact theories based on the same facts." *Brown v. City of New York*, No. 17-CV-1106, 2017 WL 1102677, at *5 (E.D.N.Y. Mar. 23, 2017). But Plaintiffs' specific factual allegations are at bottom claims for disparate treatment only. *See Kourofsky v. Genencor Int'l, Inc.*, 495 F. Supp. 2d 206 (2006) (finding that employee's allegations of being singled out and targeted could not support a claim of disparate impact); *Khalil v. Farash Corp.*, 452 F. Supp. 2d 203, 209 (W.D.N.Y. 2006) (plaintiffs' claims presented "essentially a claim of disparate treatment, and plaintiffs' claims are therefore more properly subject to disparate-treatment, not disparate-impact, analysis") (citing *Raytheon Co. v. Hernandez*, 540 U.S. 44, 53, 124 S. Ct. 513, 157 L.Ed.2d 357 (2003)). Defendants are entitled to summary judgment on this claim.

## VII.    Municipal Liability

1. Applicable Law

"The requirements for imposing municipal liability under 42 U.S.C. Section 1983 are the same as those applicable claims brought against municipalities under 42 U.S.C. Section 1981." *Williams v. City of New York*, No. 15-CV-6900, 2016 WL 5173254, at *2 (E.D.N.Y. Sept. 21, 2016) (citing *Daughtry v. City of New York*, No. 12-CV-2655, 2015 WL 2454115, at *8 (E.D.N.Y. May 21, 2015) ("Case law suggests that courts resolve ¶¶ 1981 and 1983 claims under the same substantive standards, although they might frame the analysis differently").

In addition to a violation of his constitutional rights, a plaintiff suing under a theory of municipal liability must show: "(1) the existence of a municipal policy or custom ... that caused

his injuries beyond merely employing the misbehaving officer[s]; and (2) a causal connection—

an 'affirmative link'—between the policy and the deprivation of his constitutional rights." *Harper*

*v. City of New York*, 424 Fed. App'x. 36, 38 (2d. Cir. 2011) (citing *Vippolis v. Vill. Of Haverstraw*,

768 F.2d 40, 44 (2d Cir. 1985)) (internal quotation marks omitted).

### 2. Application of Law to Facts

In their briefs, Plaintiffs make a passing reference to violations under the First and Fifth

Amendments; they do not develop an argument on these claims. Their equal protection

grievance suffers from similar deficiencies. Because they have not shown that they suffered an

injury resulting from a constitutional violation, Plaintiffs have not established municipal liability.

*See Monell v. Department of Social Services*, 436 U.S. 658, 663 (1978). Defendants are entitled

to summary judgment on this claim.

## VIII.    Conclusion

Plaintiffs' motions for summary judgment on the failure to accommodate claim and

disability discrimination claim under the ADA are granted. The medical accommodation

previously in effect for full duty FDNY firefighters is ordered reinstated.

Defendants are entitled to summary judgment on the motions for summary judgment on all

other federal claims: Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 1981,

1983, and the First, Fifth and Fourteenth Amendments of the United States Constitution.

Plaintiffs' State and City law claims are dismissed without prejudice for possible pursuit

elsewhere.

This order and judgment is stayed for ten days to permit Defendants to seek a longer stay

from the Court of Appeals.

SO ORDERED.


s/Jack B. Weinstein
Jack B. Weinstein
Senior United States District Judge

Dated: January 29, 2020
       Brooklyn, New York